## Isaac H. Hunter *v.* Geo. B. Wilkinson, Ex'r., use of A. M. Harlow.

1. PLEADING—DUPLICITY.—Duplicity in a plea is embracing in it two or more distinct separate answers to the preceding pleading where one would be complete and sufficient.

2. SAME—SAME.—But matters, however multifarious, will not make the pleading double that together constitute but one connected provision.

3. SAME—REPLICATIONS—COMMON LAW AS TO DOUBLE.—At common law, the plaintiff cannot reply two distinct replications to the defendant's plea.

4. SAME—SAME—STATUTORY RULE AS TO NUMBER.—By Rev. Code, 495, art. 105, the plaintiff may reply in answer to the plea, as many several matters as he shall think necessary to maintain his action, on condition of the leave of the court, upon affidavit setting forth the truth of the new matter; and the court has no discretion to waive the affidavit or mitigate the terms.

5. Same—Void pleading stricken out on motion.—If, without making the affidavit, the plaintiff files a second replication to the defendant's plea, it is a nullity, and should be reached, not by a demurrer, but by a motion to remove it from the files.

6. Evidence—Books of account—Evidence to impeach must be germain to the issue.—In an action of *indebitatus assumpsit*, by a physician to recover the price of services rendered, he introduced his books of account. There was no plea of payment or set-off. But the defendant sought to prove that the plaintiff had been known to receive money payment in other people's accounts, which he never entered on the books. *Held:* The evidence was not germain to the issue.

7. Statute of limitations—Open accounts.—Rev. Code, 401, art. 20, embraces two classes of accounts. 1st. Mutual; 2d. All other open accounts. As to the former, the cause of action shall be deemed to have accrued from the true date of the last item proved. As to the latter, from the date the several items thereof became due.

8. Same—Same—Local usage—Special contract.—Parties may contract as to the time when such debts shall become due, or there may be a local usage, so well known and universally acquiesced in as to the time of payment, that it will be implied that they were due at that time, unless it is shown a different time was agreed upon.

9. Same—Same—Statute suspension during late war—Case at bar.—Where an action was brought on the 5th day of December, 1867, on an open account (not mutual), the first item of which was 13th of May, 1860, and the last on 26th of January, 1861, subtracting the time the statute was suspended during the war, the action was not barred by three years' limitation.

Error to the circuit court of Yazoo county.    Campbell, J.

*Robt. Bowman*, for plaintiff in error.

The court below should have sustained the demurrer of plaintiff in error to the replications of defendant in error (who was plaintiff below), to the plea of the statute of limitations.

The replications contained two allegations, one of fact and the other of law, and were therefore duplications. Stephen on Pleading, 252, 253, 254 ; 1 Chitty, 449.

The second ground of demurrer was that the replications were not a sufficient answer to plea of the statute of limitations. The first replication sets up that the accounts were due 1st January, 1861 and 1862, respectively. Excluding the period extending from the 29th January, 1862, to 2d day of April, 1865, more than three years, as appears by the replication, had expired since the first account was due, and the time suit was brought on the 8th day of March, 1868. This replication did not, therefore, set up matter in reply or avoidance of the plea, and the demurrer, on this ground, should have been sustained.

The court below erred in refusing the second instruction

of plaintiff in error, which was "that if, from the evidence, more than three years had elapsed before the date of each or any item of said account sued on, and the commencement of this suit, excluding the period from January 29th, 1862, until the close of the war, then for all of said accounts so barred, the jury would find for defendant."

All actions of debt or *assumpsit* founded upon any open account, shall be commenced within three years next after such cause of ·action accrued, and not after. Rev. Code, 400, art. 5.

In all actions of debt or · *assumpsit*, brought to recover balance due upon a mutual and open account current, the cause of action shall be deemed to have accrued at the time of true date of the last item proved in such account; and in all other actions upon open accounts, the statute of limitations shall commence running against the several items thereof from the dates at which the same respectively became due and payable. Rev. Code, 402, art. 20.

It was not pretended, nor is there any proof that the account sued on was a mutual and open account current. It must, therefore, come within the latter clause of the act.

Mutual accounts mean accounts between the two parties, which show a reciprocity of dealing; or, in other words, if the items of an account are all on one side, as between a tradesman and his customer, and there be some items within three years, but others are beyond that period, the former will not entitle the plaintiff to give evidence of the latter. Angel on Lim., §148; Turnbull v. Stocker, adm'r., 4 McCord, S. C., 214; Halleck v. Losser, 1 Sandf., N. Y. Sup. Ct., 220; Allington v. Pennington, 7 Watts & Serg., 180; Coster v. Murray, 5 Johns. Ch., 524; Angel on Lim., § 150.

Against the demands of traders, artificers, etc., the prescription runs from the day of each article delivered, or each piece of work done, and the continuation of the supply or work done, does not interrupt it, and the statute runs against each other from the delivery or performance. Angel on Lim., §140.

The testimony of H. B. Kidd may be relied on to take this case out of the above rule. This witness was not called until after the testimony on both sides was closed, and each party had presented their instructions to the court. Even, however, if his testimony had been competent, it did not show the custom of dealing between plaintiff's intestate and defendant.

The court erred in sustaining the objection to the testimony of Sanders. The suit was on an open account for medical services alleged to have been rendered by appellee's testator in his life-time. The proof relied on to sustain the account was the correctness of the book of accounts of appellee's testator. It was proposed by defendant below to prove by this witness, that he knew of his own knowledge many accounts paid to appellee's testator in his life-time, and that he failed to make the entry on his account-book, to the credit of the party paying. An account-book is one in which are entered the transactions of trade or business. Bouvier's Law Dic., 48.

Books of account, to be admitted as evidence, must be fairly and honestly kept, and must contain an entry of his transactions in business. Moody v. Roberts & Co., 41 Miss., 78. Sanders' testimony was offered to show that the books were not correctly kept; that entries necessary to show the business transactions of appellee's testator were not made.

The court below should have granted a new trial in this case. There was no evidence to support the verdict of the jury. The defendant in error, the executor of Dr. Leak, proved that a certain book of accounts then presented to the court was handed over to him by the widow of the testator. This was all the evidence as to that book being the book of accounts of Dr. Leak.

If a party is dead, his books, though of much less weight as evidence, may still be offered by the executor or administrator, he making oath that they came to his hands as the only and genuine book of account of the deceased; that to

the best of his knowledge and belief, the entries are original and contemporaneous with the fact and the debt unpaid. 1 Greenl. Ev., § 118, note 2; Bently v. Hollenback, Wright, 169; McClellan v. Crofton, 1, Green, 307.

The books, as evidence to support a verdict, must show that they were kept for the purpose, and the entries made contemporaneous with the services rendered for, and by the person whose duty it was, for the time being, to make them. 1 Greenl. Ev., § 117, note 3; Moody v. Roberts, 41 Miss., 75.

No witness proved at what time the entries were made—there was no proof that the book presented was the book of accounts of Dr. Leake. The verdict of the jury was, therefore, clearly against the evidence, and the first instruction for defendant below, and the law. This was not a verdict against the weight of testimony, but was without any legal evidence to support it. It is, therefore, respectfully submitted to this court, that the judgment below should be reversed.

*W. & J. R. Yerger,* for defendant in error.

This is an action of *assumpsit* to recover an account due to Leak & Barnett for medical services. The suit was begun on the 5th day of December, 1867. The first item of the account is on the 13th day of May, 1860. The last item is on the 26th day of January, 1861. The defendant pleaded the statute of limitations of three years On the 29th day of January, 1862, the statute of limitations applicable to suits of this kind, was suspended during civil war, and until twelve months after its close. This court decided that the war closed on the 2d of April, 1866.

The statute of limitations was, therefore, suspended from the 29th of January, 1862, till the 2d of April, 1867. If we tried the whole account as due on the 13th day of May, 1860, when the first item was charged, there had been one year eight months and sixteen days, till the 29th January, 1862, and from the 2d April, 1867, till 5th December, 1867, there had been eight months and three days, which added together, will make two years, four months and nineteen days. So

that it is clear that counting out the time the statute of limitation was suspended, there lacked nine months and twelve days of three years, from the date of the very first item of the account. But the proof shows that no part of the account made in 1860 was due till 1st January, 1861, and no part of the account made in 1861, was due till 1st of January, 1862. So that the statute of limitation had only run about twenty-one months as to the $203, the account made in 1860, and only about nine months as to $43, the account made in 1861.

It is very clear then, that the plea of the statute of limitations, though formally valid, was in fact, frivolous. Two replications were filed to the plea of the statute of limitations. These replications were only intended to set out the suspension of the statute of limitations, and they were demurred to, because it is alleged that said replications are double and present two issues. The statute of this state allows two replications to a single plea, altering the common law in this respect. Rev. Code, 494, art. 105. The objection then, we presume, is not that there were two replications, but that the replications each contained two issues. The court overruled the demurrer to latter plea, and this is assigned for error. We confess that we are at a loss to see the force of the objection. It is true, that each replication contains several facts, but all together stated, made one replication or answer to the plea, and are, therefore, valid and formally good. That two replications were filed to the same plea, could not, if leave of the court had not been granted to file them, be taken advantage of by demurrer. The proper course would be to move to take the second off the file, if filed without leave. The objection to the evidence of F. Barksdale, on cross-examination, was correctly sustained. It was an effort to prove the incorrectness of the account sued upon, by offering proof that the account sued on was incorrect, or that any money paid on it was not credited, but that Doctor Seaborn had not credited money paid on other accounts, not against defendant, but accounts against other persons. · This was clearly

incompetent testimony, and was properly ruled out, for it did not tend, in any respect, to prove the incorrectness of the claim sued upon.  On this point, see Southern Railroad Company v. Hendrick, 40 Miss., 374; also, 40 Miss., 75.

The objection to the recall of the witness, Barksdale, and his examination after the instructions were read, but before the jury retired, is not well taken.  It was a matter of practice purely in the discretion of the court, and to be regulated by that discretion, and cannot be assigned for error.

The court cannot regard the instructions, which seem to be a part of the record.  They are not marked, as required by the statute, by the clerk, " as given or refused," and are not, therefore, a part of the record.  This court contend that incorporating them in the bill of exceptions, does not make them a part of the record, nor can it notice them, because so incorporated, it being the province of a bill of exceptions to make matters, in part, a part of the record, and not to include in it.  Because the instructions copied in the record, are not " marked by the clerk as given or refused," the court cannot notice or treat them as part of the record.  See Rev. Code, page 501, art. 161.  But, if this court would consider them, the court below acted properly in the premises.

SIMRALL, J.:

*Indebitatus assumpsit* was brought by G. B. Wilkinson, executor, etc., of —— Leak, deceased, surviving partner of Barnett, deceased, to recover for medical services rendered to Isaac H. Hunter.  To the plea of the statute of limitation, of three years, the plaintiff replied:  1st. That the accounts now due, respectively on the 1st of January, 1861 and 1862, and deducting the time of the suspension of the statutes during the war, and for twelve months afterwards, suit was brought in proper time; 2d. Replication same as the first, with the additional averments that letters testamentary were granted to Wilkinson, on the 4th March, 1867 (the testator having died the previous February, the 18th), and excluding twelve months from the grant of letters, and

the period of suspension of the statutes, three years, had not expired since the right of action accrued.

The demurrer assigns two causes: 1st. That the replications are double, presenting two issues; 2d. They were not a sufficient reply to the plea.

Duplicity in a plea is embracing in it two or more distinct separate answers to the preceding pleading, when one would be complete and sufficient. As where the defendant pleaded in disability of the plaintiff ten different outlawries adjudged against him. This was double, because the plaintiff was disabled as well by one outlawry as by the whole ten. Stephen's Pl., 252. But matters, however multifarious, will not make the pleading double that together constitute but one connected proposition. Stephen's Pl., 262. At common law, the plaintiff cannot reply two distinct replications to the defendant's plea. 1 Chitty's Pl., 649. But article 105, Rev. Code, 495, allows the plaintiff on leave of the court to plead in answer to the plea, " as many several matters as he shall think necessary to maintain his action, " upon the prescribed affidavit being made. The same privilege is accorded to the defendant in answer to any pleading of the plaintiff. The condition upon which the plaintiff may reply " several matters to the plea, is the leave of the court upon an affidavit setting forth the truth of the new matter. " The court has no discretion to waive the affidavit or mitigate the terms. The affidavit not having been made, the plaintiff had no right to file two replications. As we have on a former occasion said, demurrer is not the proper mode to reach the irregularity. It should have been by motion to remove the second one from the files. We suppose the purpose of the demurrer not to confine the plaintiff to a single replication and to invoke the judgment of the court on that point. Regarding the second replication as we do, as improperly in the record, and testing the sufficiency of the first, by the demurrer, we think that the demurrer was properly overruled. The first, if true, would avoid the plea. The plaintiff not placing himself in the circumstances prescribed by the statute

to file a second, it is a nullity. The exception taken by demurrer indicates that the defendant had waived no prerequisite to the right to plead it. This makes us dispose of the controversy on its merits.

A witness was asked if he did not know, in many instances,. that money was paid to Dr. Leak on his accounts, and he failed to credit the parties paying. Objection was made, because there was no plea of payment, or set-off filed. If, for any legitimate purpose, the matter inquired about was competent testimony, it ought to have been admitted to the jury. The books of a tradesman, or of a mechanic, or professional man, as evidence of goods sold, of work done, or services rendered, is secondary, and the terms upon which they are received is clearly stated in Moody v. Roberts, 41 Miss., 78. Whether to be admitted at all or not, is a question for the court, determinable by the considerations of whether the book of accounts bears internal evidence of being fairly kept, and whether the entries are contemporaneous, or nearly so, with the transactions of the business. If there be alterations and changes in the entries, they must be explained. They "are not conclusive evidence of the claim, but testimony tending to establish it, the credit of which is to be weighed by the jury." It was held in 30 Barb. N. Y. R., 42, that testimony of general immoral character, was not competent to impeach books of account; as that a man was given to intemperance or licentiousness—conduct in nowise connected with his character as a business man. It was said in Larue v. Bowland, 7 Barb. R., 111, that it was competent for the court "to hear anything proved, which will show that the books are unworthy of credit; and if the proof sustains the objection, to reject them altogether, and leave the party to his common law proof." We think that it is proper to submit to the jury any facts which tend fairly to impeach the books. The object of the plaintiff was to show, in detail, the amount of services rendered. There was no pretence of payment; there was neither plea nor evidence on the point. If the testator failed in some instances

to put a credit on the books, and that circumstance were admitted against his executor in this suit, the door should have been opened for explanation, and the instances might have been accounted for by accident, mistake, or some other reason; besides, payment is affirmative matter, capable of proof. These were transactions *inter alia,* not germain to the issue. If the witness had proposed to speak of charges for services not rendered, of mutilations, and alterations of charges, it would have been competent evidence. If the contest before the jury were payment, in part or whole, and the books were offered to show no entry of credit, then the excluded testimony would have been pertinent. The only issue was, were the services performed, and what was their value.

At what time did the statute of limitations begin to run against the cause of action? The position of the plaintiff in error, as evinced by his prayer for instructions, was that the cause of action begun when the last item in the account was charged. Art. 20 of Code, 401, embraces two classes of accounts, first, mutual; second, all other open accounts. As to the former, the cause of action shall be deemed to have accrued from the true date of the last item proved. As to the latter, from the date the several items thereof became due. The account sued on falls within the second class. When did the several items become due and payable? In the absence of an agreement to the contrary, from the date of the rendition of the service. But there was evidence that the bills of physicians at Yazoo city, were due at the end of the year, in which service was performed. That may be the result of a usage so universal and well known, as that there may be an implied assent to it. If the testimony was satisfactory to the jury on the point, then the accrual of the cause of action was on the first of January of 1861 and 1862.

Parties may contract as to the time when such debts shall become due, or there may be a local usage, so well known and universally acquiesced in as to the time of payment, that it will be implied that they were due at that time, unless it

is shown a different time was agreed upon.   There was no error, then, in the refusal of the court to instruct the jury as prayed by the defendant.   It is quite clear that the suit was brought within three years after the debt was due, deducting the time of the suspension of the statutes.

The proof of the claim did not rest solely on the books of account.   There was other testimony of the attendance of the physician, and rendering services.

We think that justice has been done, and affirm the judgment.