If the defendant in this case had been in adverse possession personally and through his grantors less than twenty years, we should be called upon to decide whether the vacant possession from 1842 could be held under this statute a constructive seisin by continuance from a former actual possession of more than one year, which upon the plaintiff's theory of the case had been made out.    But as this cause of action accrued more than twenty years before suit brought, it is barred at all events, and the other question becomes immaterial.    The charge, therefore, need not be discussed.

Judgment must be affirmed, with costs.

COOLEY and CHRISTIANCY, JJ. concurred.

GRAVES, J. did not sit in this case.

---

## The Atlas Mining Co. v. James R. Johnston, Guardian, etc.

*Discretion of court in rejecting juror not challenged.*  The court may, in its discretion, reject a juror, on a ground which would not strictly be sufficient to sustain a challenge for cause.  Where a jury was finally obtained to whom neither party objected, the fact that the court set aside two jurors without any challenge, because from their examination they did not seem to be entirely impartial, and excused a third because he was deaf and did not sufficiently understand the English language, is not ground of error.

*Principal not bound by act of agent in excess of authority without ratification:*  On November 11, 1864, an agent of the Atlas Mining Company made an arrangement with the plaintiff, at Atlas Mine, Michigan, to substitute, with

a change of terms as to time, as purchaser of certain lands at a guardian's sale, made by plaintiff at auction, said company in place of another who was the highest bidder therefor, at a price known to the plaintiff to be in excess of such agent's authority, with the understanding that such arrangement should be submitted to the officers of said company, at Boston, Massachusetts, for their ratification. On the next day said agent wrote to such officers, informing them of this arrangement, and a delay having occurred until January 9th, following, owing to a misunderstanding between the plaintiff and said agent whether or not the abstract of title, deed and mortgage to secure the deferred payments were to be sent to the officers of said company, at Boston, to be examined before ratification of the arrangement so made by such agent, such papers were on that day so sent, and the officers of said company, by letter from Boston, dated February 13, 1865, notified such agent that they declined to make such purchase, which decision was communicated to the plaintiff, by such agent, by letter dated March 6, 1865.

*Held,* That in an action to recover the purchase price upon such contract, under such circumstances, in the absence of any other evidence of ratification or estoppel, the company were not liable.

*Presumption that bill of exceptions contains all the evidence bearing upon the points raised.* Where a particular point is raised by a bill of exceptions, and evidence is set out in the bill as bearing, or evidently tending to bear, upon that point, unless the contrary in some way appears, it will be presumed that no evidence was given which would alter the effect of that which is stated.

*Heard April 19. Decided May 2.*

Error to Houghton Circuit.

The facts are stated in the opinion.

*Hubbell & Chadbourne* and *Newberry, Pond & Brown,* for plaintiff in error.

*Dan. H. Ball* and *C. I. Walker,* for defendant in error.

CHRISTIANCY, J.

This was an action of assumpsit, brought by Johnston, as guardian of the minor heirs of Polly Vaughn, deceased, against the mining company, to recover the purchase price of certain lands, alleged in the declaration to have been bid off by the defendant at a public sale made by the plaintiff as such guardian, in pursuance of a license from the judge of probate for Keweenaw county (in the Upper Peninsula), for the sum of twenty thousand five hundred dollars, payable, according to the conditions of the sale, six thousand

dollars on the delivery of a deed, and the balance in three years. The suit was not commenced till the three years had expired.

The plaintiff below recovered a verdict and judgment, in the circuit court for Keweenaw county, for $27,675, and the defendant brings the case to this court upon a writ of error and bill of exceptions.

The first, second and third errors assigned are upon the setting aside of two jurors by the court, and the excusing of a third.

The twelve jurors first drawn from the box being put upon their oaths, touching their competency as jurors in the cause, the plaintiff's counsel asked one of them whether he was a brother of the defendant's agent, to which he replied in the affirmative; and being then further asked by the plaintiff's counsel whether he had talked with his brother about the case, and having answered, "Last night I spoke to him about it, but he would give me no answer," whereupon, plaintiff's counsel interposing no objection, the court nevertheless excused or set him aside; and another juror being drawn, and called to take his place, was asked by plaintiff's counsel whether he had any bias or prejudice in favor of either party, to which he replied, "I have formed some opinion;" the court, without any objection from either party, set him aside.

Another juror having been drawn, and called in the place of the latter, before taking his seat stated to the court that he did not understand the English language; and the court remarking, that from previous intercourse with said juror, he knew that he was deaf, and did not sufficiently understand the English language, excused said juror.

No challenge or objection was taken to any of said jurors by either party. Defendant's counsel, however, claimed the right to examine them touching their competency, but was

prevented by the court in the manner above stated, and confined to exceptions to the proceeding. Another juror having been drawn, and called to take the place of the excused jurors, defendant's counsel was asked by the court whether he was satisfied with the jury; to which he replied, "We have no questions to ask the jury."

The counsel for the plaintiff in error (defendant below) insists that defendant was entitled, as *matter of right,* to have the case tried by the twelve jurors whose names were first drawn from the box, and not challenged peremptorily, or challenged for sufficient cause and the challenge sustained; and that there was here not only no challenge, but no sufficient ground for a challenge for cause. He relies upon *section 4392, Compiled Laws,* which provides that "the twelve first persons who shall appear as their names are drawn and called, and shall be approved as indifferent between the parties, shall be sworn, and shall be the jury to try the cause."

This construction of the statute, we are satisfied cannot be maintained. It would take from the court the power to excuse a juror from sitting in any particular cause, if competent and indifferent, however urgent the cause, but he could only be excused for the term under *sections 4389 and 4395.*

We think, within the fair meaning of this statute, when compared with the other provisions in reference to jurors and read in the light of the decisions, that the first two jurors may properly be said not to have been approved as indifferent between the parties. And though it would be ground of error for the court to admit a juror who is challenged and ought to have been rejected, it is no ground of error for the court to be more cautious and strict in securing an impartial jury than the law actually required; and that for this purpose the court may very properly

reject a juror on a ground which would not be strictly sufficient to sustain a challenge for cause; or, in other words, when the refusal to sustain the challenge would not constitute error.    So long as an impartial jury is obtained, neither party has a right to complain of this course by the court; and especially when, as in this case, no objection was taken by either party to the competency or impartiality of the jury which was obtained.    We think the court has a discretion in this matter to the extent above explained, and that this discretion was very properly exercised in the present case; and as to the juror who was excused because he did not understand the language, we think it would have been highly improper, to have allowed him to sit in the cause though unchallenged.

Evidence was given on the trial, tending to show, that the plaintiff, as guardian, had been duly licensed to make a sale of the land, and that in pursuance of such license and upon due notice, he sold the same at public auction October 31, 1864, to one Sanderson for $20,500, of which, by the terms proclaimed at the sale, $6,000 were to be paid down and the balance in *five* years; that one Joseph Paul was at that time, and up to the time of the trial, the agent of the defendant company; that he was by said company authorized to bid, and did bid at the sale, only the sum of $20,100 on behalf of said company; that his authority and this limitation of it was communicated to the plaintiff on the same day of, but after, the sale; that upon examining the statute it was found to require the payment of one-fourth down, and the balance within *three* years, which being different from the terms on which the sale was made, Sanderson refused to take the property.

Paul not professing, so far as appears, to have authority to bind the company (defendant), but believing that it would be for their interest to take the property at the

sum bid by Sanderson, and to pay the six thousand down and the balance as the statute required; and that he could induce them to do so, about the 12th of November verbally agreed with the plaintiff and Sanderson to substitute the company for Sanderson as the purchaser, and that the sale should be thus reported by the plaintiff; and the report was so drawn up by the judge of probate with a knowledge of this arrangement, Sanderson, Paul and the plaintiff being present before the judge at the time. Plaintiff signed the report thus made, which was confirmed by the judge. In this report the company was stated to have been the purchaser at the public sale.

There was no evidence in the case tending to show any prior authority of Paul to purchase for the company at any higher price than twenty thousand one hundred dollars. The company, whose office seems to have been in Boston, declined to take the property under this arrangement or to make payment. And as the main question in the case is whether there was any evidence tending to show that this arrangement made by Paul for the purchase in the name of the company was ratified by them, we set out, in addition to what has already been stated, all the evidence bearing upon this point.

The plaintiff to prove such ratification introduced a letter written by Paul to the secretary and treasurer of the company in Boston, of which the following is a copy:

"ATLAS MINE, L. S., Saturday Nov. 12, 1864.
"*Luther W. Clark, Esq., Secretary and Treasurer Atlas Mining Co.:*

"DEAR SIR,—Yesterday, the 11th instant, was the time for the settlement with Mr. Sanderson and Johnson for the purchase of the Vaughn property, and, owing to some misunderstanding as to time for payment, Sanderson refused to take the property, and Johnson called on me last evening, and wanted to know whether or not I would take

the place at Sanderson's bid, $20,500; and at this time I was perplexed to know what to do in the matter; but after thinking the matter over through the night, I made up my mind to secure the place at that figure, for if it was worth to the company $20,100, the balance, $400, is but little, and to day I have the sale transferred to the Atlas Mining Company, and the proposals making out, which will be sent by this mail. I have charged Mr. Gulick, who is our attorney here for the company and also judge of probate for the county, to be sure and have all these papers properly made out, and which no doubt but what he will, as I think he understands his business.

"There is no payment to be made until the papers have been submitted to you for your examination, etc., and I hope that my doings in the case will be satisfactory to the board. If it should not be, I can only say that it is not owing to any lack on my part in trying to do what I thought best for the interest of the company.

"Mr. Sanderson suggested the plan to me to let the thing go, and advertise it over again for sale, but this I do not think a good plan, as I know there is other parties who is anxious to get the place at $20,000, and I thought it the best way to secure the place at the present time, and till then to run the risk of getting it any less if it should be sold again. Mr. Sanderson can tell you all about it, and which he told me he would do. On receipt of the papers, I hope you will examine them, and let me know what the company will do as soon as possible. The mis-understanding as to the time of payment, was this: John-son said $6,000 down and the balance in five years. But in looking up the law in the matter he found it must not be less than one-fourth of the money down and the balance in three years. Yours, &c.,

"JOSEPH PAUL."

The record states that "defendant offered evidence tending to show that plaintiff was to send, or cause to be sent, the deed, mortgage to secure deferred payments, abstracts of title and other papers relating to the sale, to the defendant in the city of Boston, and that defendant was to have until such deed and papers reached them to determine whether to ratify the act of their agent and take the property.

"Plaintiff offered evidence tending to show that there was no such agreement. There was evidence tending to show that Joseph Paul, several times after the twelfth of November, requested plaintiff to make out and send the deed and other papers to him, to be forwarded to Boston as aforesaid, and that the plaintiff refused to do so except upon payment of first installment of purchase money, and execution of mortgage for the balance, until the 9th of January following, when plaintiff executed a deed of said land, as guardian, to said defendant, and delivered the same, with other papers, to Paul to be forwarded to defendant in Boston, plaintiff taking from said Paul the following receipt:

"'I hereby certify that James R. Johnston has this day delivered to me a deed, properly executed (description of land), belonging to the minor children of Polly Vaughn, and I am to return said deed, unless the consideration mentioned therein, viz: $20,500, is paid to him according to the terms agreed on heretofore, and mentioned in the report of sale. This deed being delivered me merely to obtain the consent of the company, and not to be delivered them absolutely till said terms are complied with. Houghton, January 9th, 1865. (Signed), JOSEPH PAUL.'

"That at the date of this receipt the deed was delivered to Paul, who at, or shortly after, that time forwarded the same, with the other papers, to defendant at Boston; that defendants by its treasurer, by letter dated February 13, 1865, sent back to said Paul the deed and other papers."

The following is a copy of so much of the letter as relates to the matter of this purchase:

"'OFFICE ATLAS MINING Co., Boston Feb. 13, 1865.
"'*Joseph Paul, Esq., Agent:*

"'DEAR SIR:—I return you the papers (deed, bond, mortgage and abstract of title) in reference to the Vaughn estate; as, after muture deliberation, the company have decided not to take the property at the price, and owing to the great depreciation of interest on Lake Superior within the last three months, are not willing to make an offer for it at this time.

"'When the company authorized you to bid at the sale things were very different from what they are at present, and we then expected to have secured the land for about $10,000. There is no sale for any stocks or interest on Lake Superior now; and when this is the case it is impossible to collect assessments on non-producing mines, without sacrificing the stock of a majority of those in interest.

"'I hope you will not feel much disappointed that we do not take the land. We are all satisfied that you have acted for the best interests of the company, so far as you could, and I speak for all the board when I say this.

"'Should we call an assessment to pay for this land I am satisfied that one-half of the stock would have to be sold in order to collect the money, this being the case, we could do no other than decline taking it at a price so much higher than we expected to get it for. I find it difficult to collect the last assessment on the 'Atlas,' while drafts have been drawn after we thought we had got through with all expenditure at the mine.'"

The record further states that "said decision was communicated to the plaintiff by letter, dated March 6th, 1865. There was no evidence tending to show that said Paul had any other instructions to purchase said land than that heretofore mentioned."

This is all the evidence given in the cause bearing in any way upon the question of the ratification by the company of the purchase as attempted to be made for them by Paul.

Upon a careful examination of this evidence, and of the entire record, we are satisfied that there was no evidence tending to show either any previous authority from the company to Paul to make the purchase he assumed to make in their name, or that his action, in this respect, was ever ratified by the company. On the contrary, we think it clearly appears that it was the understanding between the plaintiff and Paul that the latter had no authority at the time to make the purchase he undertook to make, or to bind the company by the attempted arrangement; and that, though both of them hoped and anticipated that the company would approve the arrangement, both acted upon the understanding that the arrangement and the attempted sale would not, and was not expected to bind the company without its future recognition and ratification, after the whole matter and the papers in reference to it should have been submitted to them for their deliberation; or at least until a reasonable time for such deliberation and decision after the submission to them of such matters and papers.

This sufficiently appears from Paul's letter of November 12th, introduced by the plaintiff as a part of his case, and of Paul's receipt for the deed, dated January 9th.

And whatever ground (if any) there might have been for inferring a ratification, if the company, after a reasonable time from the reception of the papers, neglected to decide, or to give notice of their disapproval, there was no evidence tending to show that their decision was not made and communicated within a reasonable time after the reception of the papers. There was no evidence touching the time by

due course of mail between the Atlas Mine, in the Upper Peninsula, and Boston, at that season of the year.

But it is urged by the counsel for defendant in error that the record does not purport to set out all the evidence, and though it states that " there was no evidence tending to show that Paul had any other *instructions* to purchase than that mentioned," it does not show that he had no other *authority*. We think the testimony above set forth is a sufficient answer to this suggestion. And where a particular point is raised by a bill of exceptions, and evidence is set out in the bill as bearing or evidently tending to bear upon that point, we are bound, unless the contrary in some way appears, to infer that no evidence was given which would alter the effect of that which is stated; since, if there had been such, it was the duty of the counsel on the other side, in settling the bill, to have had it inserted.

We think, therefore, the court erred in charging the jury that " if they should find that the company agreed to be bound by the bid of Sanderson, that said bid was made at a regular public sale, held in pursuance of law after due notice, and the highest bid made at the sale; that the name of the company was substituted in the report of sale by Gulick, at the request and by the consent of the agent of the company and of the plaintiff, and that the report was so made and executed by the guardian, and confirmed by the probate court, then the company is bound by the bid, in the same manner as if the agent made the bid personally at the sale, provided the company authorized him to make the bid or subsequently ratified the act."

This charge assumed that there was evidence before the jury from which they could properly find that the company authorized him to make the bid made by Sanderson, or subsequently ratified the substitution of the company in the

place of Sanderson, as attempted by Paul, when there was no such evidence in fact.

There being no evidence of such authority by ratification or otherwise, it is unnecessary to consider whether the contract undertaken to be made by Paul, by substituting the company in the place of Sanderson, upon different terms of payment, and Paul's assent to the making and approval of the report, would have been valid had he possessed the proper authority from his principal. It would be simply preposterous to hold that the report thus made to, and approved by, the judge of probate, and assented to by Paul, could in any way bind or affect the defendant, if Paul had no authority thus to bind them and the defendant did not ratify his action.

Had the terms of sale been the same, and the substitution of one purchaser for the other been made at the time, or before any circumstances had intervened to affect the price in the meantime, and the authority of the agent was clear, it is quite possible, under the authorities cited by the counsel for the defendant in error, that the sale might be treated in all respects as one made directly to the substituted purchaser. But where the terms of payment (as in this case) by the substituted purchaser are quite different from those upon which the property had been struck off to the original purchaser, there might, perhaps, be found to be something more than a mere substitution,—something in the nature of a new contract which might require a new sale under the statute to render it valid; but upon this we express no opinion.

The judgment must be reversed, with costs and a new trial awarded.

The other Justices concurred.