SUTTON VS. FOX.

*September 21 — October 10, 1882.*

JURORS. *(1, 2) For what causes jurors may be excluded from panel. (3, 4) Discretion of trial judge.*

CONSTITUTIONAL LAW: WITNESSES. *(5) Statute making convicts competent witnesses, constitutional, and (6) applies to convicts in prison.*

1. Though the statutes expressly confer upon a trial judge the power to exclude from a jury a person duly drawn, only upon the ground that he is related to one of the parties, or that he has formed or expressed an opinion as to the merits of the case or has some bias or prejudice therein, jurors may nevertheless be set aside for other reasons.

2. Thus, where the statute requires all the proceedings of the court to be in the English language, a person may be excluded from the jury upon the ground that his knowledge of that language is so limited and imperfect as to make it probable that he could not intelligently comprehend the proceedings in the course of the trial.

3. The power to exclude jurors for such reasons is to be exercised in the discretion of the trial judge, and only in a clear case of the abuse of the power will his decision be disturbed by this court.

[4. *Quære* whether even the exclusion of a competent and wholly indifferent juror would be ground for the reversal of a judgment, when the record shows that the case was tried by an impartial jury?]

5. Sec. 4073, R. S., which provides that "a person who has been convicted of a criminal offense is, notwithstanding, a competent witness, but the conviction may be proved to affect his credibility," etc., does not impair the right of trial by jury, or divest the courts of the state of any judicial power vested in them by the constitution.

6. The section above quoted applies to all convicts, including those who are still in prison undergoing punishment.

APPEAL from the Circuit Court for *Green Lake* County.

The complaint alleged that by the procurement of the defendant the plaintiff's barn was set fire to by Herman Gruhl and Max Claudot, and the barn and the dwelling house of the plaintiff with their contents were destroyed, to his dam-

age $15,000. The answer was a general denial. At the trial four German jurors, whose names were drawn by the clerk from the box, were examined at length by counsel for both parties and by the judge as to their ability to understand the English language and their comprehension of certain words, such as arson, accomplice, perjury, forgery, presumption, conclusive, bias, prejudice, etc., which it was assumed would necessarily be used during the trial; and, after such examination, were excluded by the court from the panel. Herman Gruhl was sworn and examined as a witness, and the deposition of Max Claudot was received in evidence, on behalf of the plaintiff, against the defendant's objection. It was admitted that both of said witnesses had been convicted and sentenced to the state prison for the crime of arson, before their testimony was required in the case, and that they were serving out their sentence at the time the testimony was taken. There was a verdict for the plaintiff, and from a judgment thereon, the defendant appealed.

For the appellant there was a brief by *G. W. Hazelton*, and oral argument by *Mr. Hazelton* and *Mr. I. C. Sloan*. They contended, *inter alia*, that sec. 4073, R. S., is unconstitutional: 1. It deprives the courts of a portion of the judicial power vested in them by sec. 2, art. VII, of the state constitution. At common law the judicial power embraced the power to punish a witness for contempt, and to order him into arrest for perjury committed in the presence of the court. A witness could only testify under and subject to this power. *Yates v. Lansing*, 9 Johns., 416; *Anderson v. Dunn*, 6 Wheat., 224; *State v. Matthews*, 37 N. H., 453; 1 Blackf., 166; *King v. Almon*, 8 St. Trials, 53; *State v. Morrill*, 16 Ark., 384; *People v. Wilson*, 64 Ill., 195; *United States v. Holmes*, 1 Wall. Jr., 1; Bishop on Cr. Law, sec. 1049; Report of Judges, 3 Binn., 595–621. The statute defines the punishment for contempt to be fine and imprisonment in the county jail. But a witness who is undergoing sentence of

imprisonment in the state prison cannot be so punished. Confinement in the county jail would be merely a mitigation of his punishment. As to such witnesses, therefore, the judicial authority is disarmed. So a convict, imprisoned for life, may commit the crime of deliberate, palpable perjury to the knowledge of every person in the court room, with impunity. The statute therefore creates a class of witnesses over whom the courts have no authority, and in whose presence the vital functions of judicial power are paralyzed. The legal effect of the statute would not have been different, yet it would have been a plain violation of the constitution, had it contained the proviso: "Notwithstanding the courts may have no power to punish such convict witnesses for contempt or to order them arrested or prosecuted for perjury." See *Callanan v. Judd,* 23 Wis., 343; *Van Slyke v. Insurance Co.,* 39 id., 390; *State ex rel. Kennedy v. Brunst,* 26 id., 412; *The Lottawanna,* 21 Wall., 558; *Taylor v. Place,* 4 R. I., 337; *Osborn v. Bank of U. S.,* 9 Wheat., 738; *Martin v. Hunter,* 1 id., 304. 2. It impairs the right of trial by jury. That right, under sec. 5, art. I of the constitution, must remain as full and perfect as it was when the constitution was adopted. *Millett v. Hayford,* 1 Wis., 401; *Norval v. Rice,* 2 id., 22; *Gaston v. Babcock,* 6 id., 503; *Stillwell v. Kellogg,* 14 id., 461. At common law no witness could be sworn unless he was liable to the pains and penalties of perjury. But under this act witnesses may testify who are in no way amenable to the punishment for that crime. If a defendant could be legally convicted of crime under our constitution upon the testimony of such witnesses, he could be convicted on the statements of persons who had taken no oath whatever. 1 Greenl. on Evi., sec. 328; Wharton's Crim. Evi., sec. 361; *State v. O'Brien,* 7 R. I., 336. It is true that at common law a witness could be used after conviction and before sentence, but he could not be used after sentence. Up to the time of sentence the law indulged the humane presumption that he might escape judgment.

For the respondent there was a brief signed by *Wm. F. Vilas*, as counsel, and *J. C. McKenney*, as attorney, and oral argument by *Mr. Vilas*.

TAYLOR, J.    The appellant assigns but two causes for reversing the judgment rendered against him in this case: *First*, that four jurors, whose names were drawn from the jury-box during the process of impaneling the jury, were set aside by the court, on the motion of the plaintiff, for reasons stated in the bill of exceptions; and, *second*, that the testimony of two witnesses was received on the part of the plaintiff against the objection of the defendant, such witnesses being, at the time their testimony was given, convicts in the state prison serving out a sentence upon conviction of the crime of arson.

The objection made to the jurors who were excluded, so far as the record discloses, was undoubtedly made upon the ground that their knowledge of the English language was so limited and imperfect as to make it highly probable that they could not intelligently comprehend the proceedings in the course of the trial.   It will be seen from the record that there is no exception taken to the justice of the verdict rendered in the action, nor that any error was committed by the judge in his instructions to the jury, or in his rulings upon the trial as to the admission or rejection of evidence, except as to the evidence of the two witnesses above referred to, nor that the jury which was finally impaneled and sworn, and tried the cause, was not an impartial and fair jury; but the learned counsel for the appellant claims that it was error not to permit the four persons whose names were drawn from the jury-box to be sworn and serve as jurors in the case.

The only statutory provisions regulating the selection and impaneling of jurors are the following: Sec. 2524, R. S.: " All persons who are citizens of the United States and qualified electors of the state shall be liable to be drawn as jurors,

except as provided in these statutes." The exceptions are found in sec. 2525. The only part of this section which can have any bearing upon the question before the court reads as follows: "And all persons of unsound mind, or subject to any bodily infirmity amounting to a disability," are exempted from serving as jurors. Sec. 2527, R. S., provides for selecting the lists of persons from which the juries to try actions at the circuit court shall be drawn; and sec. 2530 provides that "in preparing such jury lists the several supervisors, trustees, aldermen, and county boards shall select such persons only as they know or have good reason to believe are possessed of the qualifications required by law, *and are of approved integrity, fair character, of sound judgment, and well informed.*" Sec. 2540, R. S., directs how the names of the persons to form a trial jury shall be drawn from the jury-box. Sec. 2541 reads as follows: "The first twelve persons who appear as their names are drawn and called, and who are not lawfully challenged, and are approved as indifferent between the parties, *and not discharged or excused,* must be sworn and constitute the jury to try the issue." Sec. 2849, R. S.: "The court shall, on request of either party, examine on oath any person who is called as a juror therein, to know whether he is related to either party, or has any interest in the cause, or has expressed or formed any opinion, or is sensible of any bias or prejudice therein; and the party objecting to the juror may introduce any other competent evidence in support of the objection; and if it shall appear to the court that the juror does not stand indifferent in the cause, another shall be called and placed in his stead for trial of that cause." Sec. 2851, R. S., provides that each party to a civil action shall be entitled to three peremptory challenges, and no more, and prescribes how and when the challenges shall be made. Sec. 2538, R. S., provides that, "when, by reason of challenge or *otherwise,* a sufficient number of jurors, duly drawn and summoned, cannot be obtained for the trial of any cause, civil or

criminal, the court shall cause jurors, duly qualified, to be returned from the bystanders, or from the county at large, to complete the panel for such trial; and the court may, in its discretion, order a special *venire* to issue for that purpose, or such jurors may be returned by the sheriff or his deputy, the coroner, or any disinterested person appointed by the court, without writ." Sec. 2578, R. S., provides that "all writs, process, proceedings, and records in any court within this state shall be in the English language."

It will be seen that these statutory provisions do not expressly confer upon the trial judge power to exclude from the jury any person whose name is found in the jury-box, and is drawn therefrom in the way prescribed, except as provided by sec. 2849. The causes for exclusion mentioned in that section are restricted to the relationship of the juror to either of the parties, to the fact that he has formed or expressed an opinion as to the merits of the case, or has some bias or prejudice therein. Clearly this section does not cover the case of a person, whose name is placed upon the jury list, who is unable to speak or understand the English language, who is not a citizen and an elector, who is exempted from service as a juror for any cause, who is deaf, or so sick or infirm as to be unable to sit in the case, who is an idiot or insane, who is afflicted with a contagious or loathsome disease which would make it improper for him to associate with other men, and is drawn as a juror to try a cause in court. Still, it cannot be denied that the trial court must have the power to exclude such person from the jury. A construction of the law which would deprive the court of the power to purge the jury of such unfit persons would be monstrous. It has been frequently held that the causes of challenge enumerated in a statute are not exclusive of all others. It has been well said "that the grounds of challenge for cause are so various that any attempt to collate them in a statutory provision must necessarily be only par-

tially successful. Causes of a most positive character are liable to arise out of the facts of specific cases, which must result in a failure of justice if the statutory causes only are to be recognized." Thompson & Merriam on Juries, § 175, and cases cited. Nor do we understand the learned counsel for the appellant to contend for any such construction. Their contention is that it was not made to appear that the persons excluded by the judge were so ignorant of the English language as to justify their exclusion on that ground. That a juror may be excluded for that cause, when it exists, is not denied. To hold otherwise in a court, when the law requires that the proceedings shall be in the English language, would be to render the trial by jury a mockery. That such want of knowledge of the English language is a good ground for excluding a juror, has been determined by every court in which the question has been raised, when the law required that the proceedings of the court should be in the English language, unless the statute of the state, either in express terms or by clear implication, provided that such want of knowledge of the English language shall not be a ground of exclusion. Thomp. & M. on Juries, §§ 175, 259; *Atlas Mining Co. v. Johnston,* 23 Mich., 36; *People v. Arceo,* 32 Cal., 40; *State v. Rousseau,* 28 La. Ann., 579; *State v. Guidry,* id., 630; *State v. Push,* 23 La. Ann., 14; *State v. Gay,* 25 La. Ann., 472; *State v. Marshall,* 10 Smith, Cond. Rep. (Ala.), 240; *Plankroad Co. v. Railroad Co.,* 13 Ind., 90. For reasons peculiar to the people in certain counties in Colorado, it was held by the supreme court of that state that want of knowledge of the English language was not a good reason for setting aside a juror. *Trinidad v. Simpson,* 5 Colo., 65. It would seem unnecessary to add authorities to sanction a practice so just and necessary to the proper administration of justice, and which has been recognized and acted upon by all the courts of this state, without objection, from its first organization. As said above, the learned coun-

sel for the appellant do not question the propriety of the exercise of the power in a proper case, but deny that the record discloses any cause for its exercise in this case.

Admitting the power of the court to exclude a juror because of his want of knowledge of the English language, it follows that the power must be exercised in the discretion of the presiding judge, and it would require a clear case of the abuse of the power to call for the intervention of this court. Thompson and Merriam, in their work above cited, sec. 258, say: " The rule is well settled that it is the duty of the court to superintend the selection of the jury, in order that it may be composed of fit persons. Large discretion must be confided to the trial court in the performance of this duty, nor will the action of the court in this behalf be made the subject of revision unless some violation of the law is involved, or the exercise of a gross or injurious discretion is shown." A large number of cases are cited by the learned author to sustain this position, and there can be no doubt as to the soundness of the rule stated. The trial judge occupies a place of advantage, in determining questions of this kind, which renders it highly improper for this court to overrule the decision of such judge in setting aside a juror except where it clearly appears, as is said above, that there is some violation of law, or the exercise of a gross or injurious discretion is shown. See Thomp. & M. on Juries, § 252, and cases cited in notes. That there is no violation of law in setting aside a juror whose name is drawn for the trial of a cause, for other reasons than those set out in sec. 2849, is not disputed.

Sec. 2541, R. S., clearly implies that the court may excuse or discharge persons who are so drawn, notwithstanding they may be approved as indifferent between the parties. We are not prepared to say that it appears from the record that the trial judge in this case exercised any injurious or gross discretion in setting aside the four jurors named in the record. But, if the record disclosed a state of facts which

clearly demonstrated that these persons did sufficiently understand the English language to render them competent and proper jurors in the case, there would still be very grave doubts whether the verdict should be set aside for that cause. From the record it appears that the appellant has been tried by a fair and impartial jury. He has no reason, therefore, to complain, and does not complain, of the injustice of their verdict. He simply alleges that he was entitled to be tried by persons whose names are first drawn from the jury-box, and who are approved as indifferent between the parties, and who are not excused or discharged for good cause by the trial court. The words "for good cause" are not in the statute, but it is claimed that such must be the interpretation which should be given to it. The causes for excusing jurors, even after their names are drawn for the trial of a case, are so numerous, and involve so many considerations which must be addressed to the discretion of the trial judge, that it cannot well be interfered with by an appellate court without great danger of embarrassing the action of the trial court, and doing more injury than good. We think there are very substantial reasons for holding that the excusing or setting aside even a competent and indifferent person should not be ground for the reversal of a judgment when the record shows that an impartial jury has been impaneled for the trial of the case. It has been well said: "If a new trial be granted for such cause, there is no probability that the persons set aside will be again drawn upon the jury, and all the party complaining can have is a new trial by an impartial jury, and that he has already had on the first trial."

In the case of *State v. Marshall, supra,* Justice ORMUND says: "Of all the discretionary powers of the court this would seem to be the least liable to abuse, as it is altogether conservative. Its exercise is confined to the exclusion of improper or unfit persons as jurors, and how this could prejudice the accused it is difficult to perceive. If in its exercise

the court should reject a person qualified to sit as a juror, how does that prejudice the accused? If a juror disqualified by law is put upon the prisoner the case would be different; but if he is tried by an impartial jury he has sustained no injury." *Tatum v. Young*, 1 Porter (Ala.), 298; *U. S. v. Cornell*, 2 Mason, 91; *Comm. v. Livermore*, 4 Gray, 18; *Atlas Mining Company v. Johnston*, 23 Mich., 37; *Ware v. Ware*, 8 Me., 42; *Hurley v. State*, 29 Ark., 17; *State v. Ward*, 39 Vt., 225; *Mauer v. State*, 8 Tex. App., 361; *O'Brien v. Vulcan Iron Works*, 7 Mo. App., 257; *Watson v. State*, 63 Ind., 548; *State v. Dickson*, 6 Kan., 209; *Stout v. Hyatt*, 13 Kan., 232; *Railroad Co. v. Franklin*, 23 Kan., 74; *Ayers v. Metcalfe*, 39 Ill., 307; *John v. State*, 16 Fla., 554; *Dodge v. People*, 4 Neb., 220–230; *Booming Co. v. Jarvis*, 30 Mich., 308; *Head v. State*, 44 Miss., 730–750; *Pierce v. State*, 13 N. H., 536.

The second ground of error alleged by the learned counsel for the appellant is that the two convict witnesses were not competent witnesses for the plaintiff and that their testimony should have been rejected by the court. To sustain this objection the learned counsel for the appellant have made a vigorous attack upon the constitutionality of sec. 4073, R. S. 1878, which reads as follows: "A person who has been convicted of a criminal offense is, notwithstanding, a competent witness; but the conviction may be proved to affect his credibility, either by the record or by his own cross examination, upon which he must answer any question relevant to that inquiry, and the party cross-examining him is not concluded by his answer." The learned counsel for the appellant contend with great earnestness that this section is a violation of the provision of the constitution which secures a party to a civil action a trial by jury, and the other provision which vests in certain courts the judicial power of the state. Notwithstanding the ingenuity and earnestness of the argument, we are unable to comprehend how a stat-

ute, which simply removes a statutory or common law dis-ability of a witness, can by any possibility violate either of these provisions of the constitution. It is no more a viola-tion of the constitutional privilege of a trial by jury than any other law which removes a disability which excluded a person as a witness at the time the constitution was adopted, and we are not aware that any law removing such disability has ever been held by any court to violate that provision; nor do we find that any writer on constitutional law has ever suggested that such legislation was a violation of the right of trial by jury. On the contrary, all such laws tend to give force to that provision by enlarging the means of presenting to the jury all the evidence which tends to sus-tain either the plaintiff's cause of action or the defendant's defense. They give efficiency to that provision rather than defeat it. Nor are we able to understand how the appear-ance of a convict in court as a witness tends to destroy or lessen the judicial power which the constitution has vested in it. The witness may be obstinate, or insolent and abusive, and it may be difficult for the court to preserve its dignity or to adequately punish the offender, but such pos-sible inconvenience cannot be said to divest the court of any judicial power vested in it by the constitution.

The moral character of a witness was never a test of his competency, although in England and in some of the states of the United States his religious belief was made a test. The thief, the robber, the ravisher, and the murderer, though convicted of the crimes with which they were charged, if not sentenced, as well as the felon who admitted his guilt, were at common law permitted to go upon the witness stand and give their testimony, while the man who was deficient in his religious beliefs, or who was interested in the action, was rejected as incompetent. It would seem, therefore, that a law which abolished the test of religious belief or want of interest as a qualification of a witness, would be a much

greater innovation upon the orderly proceedings of a jury trial, as the same were conducted in England and those states which had adopted the English rules governing the same, than the law now in question, which simply does away with a disqualification which depended upon a mere technicality. The removal of the disability of religious belief, or the disability of interest in the subject matter of the action, has never been held by any court to be a violation of the constitutional right of trial by jury, and no writer upon constitutional law has ever suggested that it was a violation of such right. The man who is confessedly guilty of a felony, or who has been convicted thereof after a fair trial by the verdict of a jury, is no less corrupt, degraded, or unworthy of belief before sentence than he is after; nor is the purity or dignity of the court more offended by his appearance on the stand after he is sentenced than before. The convicted felon, who is undergoing the just punishment of his crime, is not a less trustworthy witness than the admitted felon who is put upon the stand by the state with an implied understanding that if, with the aid of his testimony, his associates are convicted, he will escape punishment. The moral influences are certainly in favor of the witness who is under sentence. The earnest and very able argument made by the learned counsel for the appellant against the admission of the evidence of witnesses undergoing sentence, would have great force if addressed to the legislature upon the propriety of the passage of a law making them competent witnesses; but we are unable to discover its force as an argument to prove the want of constitutional power in the legislature to pass the act. A law which simply removes the disability of a witness does not impair the right of trial by jury, or divest the courts of the state of any judicial power vested in them by the constitution.

The point made by the learned counsel for the appellant, that the law properly construed does not cover the case of a

Luthe vs. The Farmers' Mutual Fire Ins. Co. of Ripon.

convict who is still in prison undergoing punishment, we are clearly of the opinion cannot be sustained. The language is general, and was clearly intended to apply to all convicts. If there is any propriety in the law it certainly should apply to all cases equally. The facts and circumstances of the case at bar are a vindication of the propriety of the enactment of the law in controversy. Had the evidence of the witnesses, who were rendered competent witnesses by this law, been excluded, it is highly probable that a great wrong would have gone unwhipped of justice.

*By the Court.*— The judgment of the circuit court is affirmed.