## Case No. 16,682.

UNITED STATES v. WHITE et al.

. [4 Mason, 158.] .

Circuit Court, D. Massachuse.s: Oct. Term, 1826.[2]

JOINT INDICTMENT FOR CAPITAL OFFENCE—SEPARATE TRIALS—IMPANELING JURY.

1. Where two or more persons are jointly indicted for a capital offence, as for murder, they are not, as a matter of right, entitled to a separate trial if they request it; but it is matter of discretion to be judged of by the court under all the circumstances of the case.

[Cited in brief in Com. v. James, 99 Mass. 439. Cited in Hawkins v. State, 9 Ala. 137; State v. Desroche, 47 La. Ann. 651, 17 South. 211; State v. Jacobs, 106 N. C. 695, 10 S. E. 1031; State v. Meaker, 54 Vt. 118.]

[2. Cited in State v. Holme, 54 Mo. 159, to the point that the jury is to be composed of the first twelve men whose names remain upon the panel after all the challenges are exhausted.]

Indictment against the defendants [John D. White, otherwise called Charles Marchant, and Winslow Curtis, otherwise called Sylvester Colson] for murder on the high seas. They severally pleaded not guilty, and afterwards moved the court for a separate trial, contending for it as a matter of right. The motion was resisted on the part of the United States.

Mr. Blake, U. S. Dist. Atty.

Bartlett & Warner, for prisoners.

Before STORY, Circuit Justice, and DAVIS, District Judge.

STORY, Circuit Justice. The present is a joint indictment against the prisoners for murder. They have severally pleaded not guilty. And a motion has now been made in writing, in behalf of one John D. White, otherwise called Charles Marchant, that he may be tried

1 [Reported by William P. Mason, Esq.]
2 [Affirmed in 12 Wheat. (25 U. S.) 480.]

separately; and this he claims, as a matter of right. The motion is resisted on the part of the district attorney for the United States, who utterly denies that there exists any such right in law; and the parties are now before us upon the mere matter of right. In capital cases it is always the desire of the court to grant every reasonable favor to the prisoners; but it is, at the same time, its duty to allow the government its fair and regular claims. Upon a joint indictment for a capital offence, there is no doubt, that the prisoners may be jointly tried; and it is equally true, that upon such an indictment they may be severally tried. I do not cite authorities on this point, because the law is familiar and well settled. Where the trial is separate, each party is, of course, entitled to the full number of peremptory challenges. Where the trial is joint, the right of peremptory challenges is in no degree narrowed or affected. Each prisoner has a right, in such case, to challenge the full number, and is unaffected, in this respect, by what the other prisoners do. If, therefore, in a capital offence, where twenty peremptory challenges are allowable by law, there is a joint indictment and joint trial of several persons, each may challenge the whole number to which he is entitled; and if there be two on trial, the challenge may extend to forty; if three, to sixty, &c. The only question, in such cases, formerly was, whether a juror, challenged by one prisoner, and not by another, was to be withdrawn as to all. It was soon settled, upon just and reasonable principles, that no man ought to sit as a juror upon a joint trial, who was not, in the estimation of all the prisoners, indifferent as to all. Hawk. P. C. bk. 2, c. 41, § 9; 2 Hale, P. C. 268; Co. Litt. 156. These positions are believed to be incontrovertible.

It is argued, that the right of a separate trial is a necessary result of the several right of challenge, if the prisoner chooses to claim it. The reasoning is of this sort. The prisoner, in favorem vitæ, has a limited right to elect his jury. If he is tried alone, it is always in his power to say, who that jury shall be. But if he is tried jointly with another person, then the jurors he may wish to serve on his trial may be challenged by the other prisoner, and so his right of election and selection may be materially impaired. This is complained of as a hardship, which the law will not allow. If the argument itself be well founded in point of law, the conclusion is certainly right; for in a capital case the full benefit of the party's rights ought to be saved to him with the utmost tenderness. The difficulty in the argument (assuming the question to be new, and to be decided upon general principles) is, that it takes for granted the very point in controversy. The right to challenge for cause is unlimited; but the right of peremptory challenge, without cause, is limited. What is the right of peremptory challenge, but a right to exclude from the trial

any persons, who are disagreeable to the party on trial? Suppose the panel to consist of 72 persons, and the challenges to be limited to 20, all that the prisoner can do, is to exclude 20 from this list; and it depends altogether upon the order, in which the jurors are called, who may be excluded or not. If the prisoner challenge the first 20, who are called, the 12 next called from the remaining 52, constitute the jury. It is true, that if he chooses to suffer any juror to be sworn, before he has exhausted his challenges, to that extent he selects his jury; but this is a mere incident to his right to exclude jurors to a limited extent; and not the principal object contemplated by the law. Mr. Justice Blackstone, in his Commentaries (4 Bl. Comm. 353), with his usual perspicacity and accuracy, states the reasons, on which the right of peremptory challenge is founded. He says: "In criminal cases; or at least in capital ones, there is in favorem vitæ, allowed to the prisoner an arbitrary and capricious species of challenge to a certain number of jurors, without showing any cause at all, which is called a peremptory challenge; a provision full of that tenderness and humanity to prisoners, for which our English laws are justly famous. This is grounded on two reasons: (1) As every one must be sensible, what sudden impressions and unaccountable prejudices we are apt to conceive upon the bare looks and gestures of another; and how necessary it is, that a prisoner, when put to defend his life, should have a good opinion of his jury, the want of which might totally disconcert him, the law wills not, that he should be tried by any one man, against whom he has conceived a prejudice, even without being able to assign a reason for such his dislike. (2) Because upon challenge for cause shown, if the reason assigned prove insufficient to set aside the juror, perhaps the bare questioning his indifference may sometimes provoke a resentment; to prevent all ill consequences from which, the prisoner is still at liberty, if he pleases, peremptorily to set him aside." It is observable, that here the learned judge does not make the slightest allusion to any reason for the right of peremptory challenge, like that now insisted on. Indeed, from another right, admitted to exist in the crown, it is plain, that the reason could not generally apply. It is this. The crown, ever since the statute of 33 Edw. I., has been ousted of its right of peremptory challenge. But still the crown has a right to object to any jurors, without assigning any cause, until the whole panel is gone through; and the jurors so objected to, are set aside without more, if there are enough remaining upon the panel to form a jury, after the prisoner has exhausted his right of challenge. It is only, when sufficient jurors do not remain, before the challenges are exhausted, that the crown can be called upon to assign a cause. This is laid down in Hawk. P. C. bk. 2, c. 43, § 3, and is undisputed law. 2 Hale, P. C. p. 271, c. 36; 1 Chit.

Cr. Law, 534; 4 Bl. Comm. 353, and Christian's note, 3 Bac. Abr. "Jury," E. 10; Staund. P. C. bk. 3, c. 7, § 162, b; 1 Starkie, Cr. Pl. 35, note; Rex v. Coningsmarke, 3 State Tr. 469. The result of this counter right on the part of the crown, it will at once be perceived, if exercised, may, in a great measure, accomplish the same purpose, as the challenges of a fellow prisoner. It does, in effect, prevent an absolute choice of those, who shall try; but leaves the party at liberty to say, who shall not.

The general reasoning, then, on which the argument is founded, of the matter of right, is not conclusive of itself. Let us now see, how it stands upon authority. One of the earliest cases is Beauchamp's Case (in the Year Book), 9 Edw. IV. § 27, pl. 40. It was an appeal against several, who pleaded not guilty, and one venire was awarded against all; and one of the defendants challenged a juror peremptorily; and the question was, if he was to be set aside, as to all; and it was held by all the judges, that, inasmuch as the venire was joint, the challenge of him is good for all; for he may not be drawn against one, and taken for the rest. And it was there said, that at a gaol delivery, if an inquest is demanded to pass upon two or three men and one challenge peremptorily, then the clerk ought to sever the felons, each one by himself. This case is cited in Plow. 100, and, accurately, as I have occasion to know, having examined the original. The only point decided was, that a challenge by one was good for all; and the party is struck from the panel. What is said, as to the practice at gaol delivery, is expressive only of the power of the court to sever the panel, and not of the right of a prisoner to demand a separate trial. In Plow. 100, the case was, that several persons were jointly indicted for murder. They pleaded not guilty, and were put on trial; and one inquest was charged upon them all; and they challenged divers jurors peremptorily, and all agreed in the challenge; and because there were not jurors enough left in the inquest to pass upon them, a tales was awarded, returnable immediately; after which return the prisoners challenged peremptorily, and did not agree in the challenges; for some challenged some of the jurors peremptorily, and others prayed they might be sworn. And it was held by the court, that the jurors so challenged must be drawn against all; for in judgment of law, it was not a joint arraignment, but several arraignments; because their offences are several; yet inasmuch as one venire was awarded for all, a juror, challenged by one, must be drawn as to all. The court perceived, that it was the intention of the prisoners, by exercising each his full right of challenge, to postpone the trial, "as there was but a small number of persons then in the town of sufficiency to be sworn." It was therefore debated, whether the panel might be severed, and the prisoners tried severally; and the court held, that it might; and that

they could do so upon the application of the crown. And the prisoners were informed of this, and finally agreed to join in their challenges, and were jointly tried. In this case, it is at once perceivable, that the whole question was the right of the court to sever the panel of the tales, and to order a several trial of the prisoners, they being willing to be jointly tried. 2 Hale, P. C. 264; Id. 263; Co. Litt. 156b. In Thymolby and Gray's Case (Dyer, 152b), a like course was adopted. The doctrine in Kelyng, 9, is to the same effect. It was there resolved by the judges, "that if several prisoners be put upon one jury, and they challenge peremptorily, and sever in their challenges, that then he, who is challenged by one, is to be drawn against all, because the panel being joint, one juror cannot be drawn against one and serve for another. But in such case it was agreed the panel might be severed, and that the same jury may be returned betwixt the king and every one of the prisoners; and then they are to be tried severally; and there the challenge of one prisoner is no challenge to disable the juror so challenged against another prisoner." And it was there added, that the case of Dr. Ellis's servant, Plow. 100, 101, was agreed to be good law as to the severing of the panels in that case; and accordingly afterwards, upon the trial of Harrison and others, who challenged peremptorily, and severed, in their challenges, particular jurors, the panels were severed.

Hitherto the cases may be fairly considered as advancing no farther than to establish the general authority of the court to sever the panel, when there is a joint venire, in cases where, by reason of challenges from the number of jurors returned, there might otherwise be a defect of trial. 2 Hale, P. C. 263. This will be easily understood, when it is known, that at common law the sheriff might have returned as many jurors as he pleased; but the statue of Westm. II. c. 38, ordained, "that in one assize no more shall be returned than twenty-four." The common practice of the sheriff, under his precept, used to be to return, at the sessions of gaol delivery and oyer and terminer, forty-eight jurors, although the precept named but twenty-four. 3 Bac. Abr. "Juries," bk. 6; 2 Hale, P. C. 263. It was, indeed, held, at an early period, that the statute of Westminster, did not apply to criminal trials. Still, the usual practice prevailed, unless when the court ordered a larger number to be returned. This is clearly stated in 3 Bac. Abr. tit. "Juries," bk. 6, and in J. Kelyng, 16. See U. S. v. Insurgents [Case No. 15,443]. By a statute made early in the reign of George II. (3 Geo. II. c. 5, § 8), the sheriff is required to return, not less than 48, nor more than 72 jurors, to serve at the assizes, unless the judges should direct a greater or less number. 3 Gwillim's Bac. Abr. "Juries," bk. 6, p. 330. With this practice in view, the necessity will readily be perceived of serving the panel in England, in many capital trials of persons jointly indicted; for if two or more persons should be jointly tried, and sever, in their challenges, there would ordinarily, if each should exercise his full right of challenge, be a defect of jurors. The consequence would be, that the crown would be forced to sever the panel, or to pray for an award of a tales, which might prevent a trial at the same assizes. Mr. Chitty accordingly, in his treatise on Criminal Law (1 Chit. Cr. Law, 535), states, "that when the right of challenging exists, though several defendants are tried by the same inquest, each individual has a right to the full number of his challenges; but if they refuse to join in their challenges, they must be tried separately, in order to prevent the delay, which might arise from the whole panel being exhausted." The reason here given, so far from intimating it as a right of the indictees to have a several trial, proceeds altogether upon the notion of public inconvenience and delay. See 1 Starkie, Cr. Pl. 35. So Lord Hale seems to have considered the case, in 2 Hale, P. C. p. 263, c. 34.

The principal doubt, on my mind, upon the first breaking of the question, arose from the decision in Charnock's Case, reported in 3 Salk. 81, 4 State Tr. 594, and 12 Howell, State Tr. 1454. It was an indictment for high treason against several persons. Upon their trial, Lord Chief Justice Holt is reported in 3 Salk. 81, to have told them, "that each of them had liberty to challenge thirty-five of those, who were returned upon the panel to try them, without showing cause; but if they intended to take this liberty, then they must be tried separately, and singly, as not joining in the challenges; but if they intended to join in the challenges, then they could challenge but thirty-five in the whole, and might be tried jointly upon the same indictment." His language, as reported in the State Trials, is somewhat stronger. "If," said he, "you will all join in the same challenge, then we can try you altogether, as you are altogether jointly in the same indictment, and save the time and trouble that will otherwise be unavoidable; but if you will not join in the same challenge, but every man challenge for himself, as by law he has liberty to do, we must be forced to try you single." And he again repeated, "if you do not all agree in the same challenges, ye cannot be tried together by the same jury, but the court must separate you, and try you every one single." This language at first led my mind to the conclusion, that Lord Holt might intend to speak of something more than a mere discretionary power in the court to sever the trial of the prisoners, upon a supposed inconvenience, or a possible defect of jurors. It admits of an interpretation favourable to the absolute rights of the prisoners, to be severally tried, if they should so choose. In the case before him, it does not appear, how many of the jurors, who were summoned (being, as

the report states, above eight score), were present, it only appearing, that "those, who answered to the call, were recorded." The prisoners elected to challenge jointly.

In Fost. Crown Law, 106, in the case of Swan and Jefferys, on a joint indictment for murder, it is stated, that "before the jury was called, the judges agreed between themselves, that if the prisoners should not think fit to challenge at all, they might be tried together; but if they should insist on their challenges, they must be tried separately; because they cannot join in their challenges, the number of their peremptory challenges being differently limited, Swan's to 35 (as in a case of petty treason), and Jefferys' to 20." Swan waived all benefit of challenging; Jefferys challenged two or three, and a jury was sworn, and they were found guilty and executed. The reason here given applies solely to the case of a right to different challenges in the prisoners. The language seems indeed to intimate, that if they challenged at all, they could not be jointly tried; but in point of fact, one did challenge, and the cause proceeded. The language is, in this respect, inaccurate. In another respect it perhaps requires some qualification. It is said, the prisoners could not join in their challenges. To the extent of twenty they certainly might; but beyond that, their rights were different. What the court probably intended was, that as they had different rights of challenge, and could not join throughout, they must be tried separately, unless they joined in their challenges, and Swan waived all beyond twenty; for there seems no difference in point of law, as to the right of a joint trial, whether Swan waived all benefit of challenging, or agreed, that Jefferys might challenge for both, waiving his right beyond Jefferys' challenges. It may be thought, that the doctrine in Fost. Crown Law, 106, rather inclines against the right of the prisoners to insist on a separate trial, where the right of challenge is the same. But it does not necessarily require this construction, because the question was not, whether they had a right to insist on a separate trial, but whether they could be jointly tried, unless Swan waived his extra right of challenge.

In the case of William Jackson and six others, tried for murder in 1748, before Mr. Justice Foster and others, 9 State Tr. 1, he told the prisoners, "that they might each of them challenge twenty of the panel, without showing cause for so doing; and that if they agreed to join in their challenges, they might be tried together; but if they did not, they would be tried separately." They agreed to join, and were tried accordingly. This language is not quite so strong, as that of Lord Holt; but it is not decisive against the argument for the right, derived from the language of the latter in 3 Salk. 81.

But in the course of the researches made by the bar, a case has been produced, which is di-

rectly in point. It is the case of Noble and two others, tried before Lord Chief Justice Parker in 1713. 9 State Tr. 1; 15 Howell, State Tr. 731. The indictment was joint against Noble for the murder of John Sayer, against Mary Sayer for petty treason, and against Mary Salisbury for aiding and abetting the murder. Noble moved the court for a separate trial, "and apart from the ladies, for that his crime and theirs were distinct things." The motion was overruled; and he was convicted, and the ladies acquitted. When brought up for judgment, he moved in arrest of judgment, on account of the mistrial, and to use his own words, "in that we were severed in our challenges, and yet were tried together by the same jury." He cited the Case of Charnock, before Lord Holt, and quoted his language at large from the printed trial; and he desired his counsel might speak to the point. The court overruled the motion in arrest of judgment, "alleging that the Lord Chief Justice Holt's reason, in the Case of Charnock, King, and Keys, was, that in case each of them severally challenged thirty-five, three times thirty-five would amount to one hundred and five, and then they must be obliged to sever them (as the court were near obliged to have done in the present case), for default of jurors." The prisoner was sentenced, and afterwards executed. There is a curious document appended in a note to this trial, in the State Trials, which was published before the execution of Noble, and is conjectured to have been written by Mr. Emlyn, but which purports to be by a student of law, upon the point ruled by the court. Its object is to establish, that the prisoner had a right to a separate trial; and the author has diligently collected and reviewed all the authorities. The pamphlet was probably intended to produce a pardon of Noble; but it failed of any such effect; and there does not appear to have been any question raised among the judges on that occasion. The author alludes to his having been present at the trial, which was in Surry; and he states a very curious fact, that happened on the motion in arrest of judgment. After having desired that his counsel might speak to the point, Noble was asked, who were his counsel. "He answered, Mr. Darnall and Mr. Bonwick, who were by the court readily assigned to be his counsel; but (for what reason I cannot well apprehend) could neither of them be prevailed on to speak to it."

Here, then, is a solemn adjudication of the very point, under circumstances of peculiar deliberation, and in which it is but just to presume, that Lord Chief Justice Parker, if at that time it was a matter of the slightest doubt, obtained the full opinion of the other judges. Considering the case, and its circumstances, and particularly the fact, that counsel, learned in the law, declined to argue the point, it seems but reasonable to suppose, that the law, as pronounced by the chief justice, was not supposed to be novel or extraordinary. The exposition given by him of the decision of

Lord Holt, is certainly not inconsistent with the language of it; and considering how very few years intervened between the two cases, it may justly be presumed, that the exposition was known by him, personally, to be according to Lord Holt's real meaning. At least, I cannot find, that this decision has at any time since been doubted or denied by any other judges, although the case must have been of frequent occurrence; and the case and the objections being in point, could not escape the general observation of the profession.[3]

It remains to examine the American cases. The case of U. S. v. Insurgents of Pennsylvania [Case No. 15,443], does not appear to have any direct bearing, except so far as it shows, that the rules of the common law, in all cases not expressly provided for, ought to be followed in criminal trials. In U. S. v. Sharp [Id. 16,-264], upon motion made by counsel for a separate trial of some of the prisoners upon a capital indictment, the court granted the motion. No reasons are given, and no opposition seems to have been made to the motion; but it was claimed, as a matter of right. In People v. Howell, 4 Johns. 296, which was at the trial supposed to be a capital forgery, but afterwards was decided by the supreme court not to be so, the subject was a good deal discussed. The trial took place in the court of general sessions, the prisoner, Howell, being indicted jointly with another person. He requested to be tried apart; and the motion was overruled by the court. But peremptory challenges were allowed to the prisoners, and both challenged. The cause came on, and was afterwards argued before the supreme court, and this, among other causes, was assigned as an error at the trial. The learned counsel for Howell, who was himself educated at the English bar, admitted, in his argument, that there was a compulsive power in England to try the parties jointly; but he distinguished the case upon the local laws of New York. He observed, "that though in England prisoners may be compulsorily tried together, yet there were substantial reasons for a different practice in this state. In England the sheriff is unlimited as to the number of jurors to be returned on the panel. By the act of March 31, 1801 of New York, the sheriff is authorized to summon no more than 36." Mr. Chief Justice Kent delivered the opinion of the court; and after stating the fact, that the case was not capital under the act, proceeded to declare, "that in all cases, at least where the right of peremptory challenge does not exist, and two persons are jointly indicted, they may be tried jointly or separately, at the discretion of the court." I think I may say, that such an opinion establishes the conclusion, that up to that period no doctrine was known in New York, recognising the absolute right of a prisoner to a separate trial. If it had been, it could not have escaped the notice of this accurate judge.

I have made inquiries among those learned minds in our own state, whose situations would lead them to a thorough knowledge of the practice; and the result of those inquiries is this. No case has occurred, in which, when a prisoner, jointly indicted with others, has moved for a separate trial, it has ever been objected to by the officers of the government, or denied by the court. On the contrary, it has been always granted, without objection, under the prevailing notion, that if not matter of right, it was at least a sound exercise of legal discretion. If the point ever had been made and decided, I would gladly follow the course of the court; but it has not. I cannot however say, that there is now any clear authority in favor of the motion, as a matter of right, which is the only way in which the counsel of the prisoner have advisedly chosen to present the point to this court. On the other hand, there is a direct authority, before an eminent judge, against it. In criminal cases, a court should slowly advance any new doctrines; and for one, I must say, that although my first impression, upon a cursory examination of authorities, was in favor of the motion, as a matter of right, my final judgment is against it.

If the motion shall be put, as a matter of discretion, to the court, it will present a very different question. In favor of life, especially where the party puts his defence upon a ground distinct from his fellow prisoner, and adverse to him, there is much reason to induce a court to yield every indulgence, not absolutely inconsistent with justice to the government. I am for overruling the motion, in its present form, because it claims it as a matter of right, leaving the prisoner to any new course, which his counsel may advise.

Motion overruled.

The district judge concurred in this opinion; but as it was a matter of not infrequent occurrence, and important to the practice of the court, the judges afterwards divided in opinion for the purpose of obtaining a solemn decision of the superior court, and at January term, 1827, the supreme court affirmed the doctrine of the present opinion. 12 Wheat. [25 U. S.] 480. [See Case No. 14,905.]

---

[3] In Rookwood's Case, 4 State Tr. 661, 667, 13 Howell, State Tr. 139, the course adopted by Lord Chief Justice Holt and the other judges, seems to have been guided by the very reasoning, which Lord Chief Justice Parker supposes to have governed in Charnock's Case, and confirms his opinion.