THE PEOPLE v. WILLIAM APLIN.

*Criminal law—Jury—Right of challenge—Burglary—Curtilage.*

1. Until a respondent has exercised all of his peremptory challenges, he cannot be heard to complain of the retention of an alleged incompetent juror; citing *Sullings v. Shakespeare,* 46 Mich. 408; *People v. Barker,* 60 Id. 277; *Theisen v. Johns,* 72 Id. 285.

2. A barn adjacent to the dwelling-house of the owner, and to which he has access by means of a gate or bars, and which he uses for the better enjoyment of the dwelling-house, as farmers commonly use such buildings in connection with their homesteads, is within the curtilage, and under the law will be regarded as a part of the dwelling-house.

Error to Genesee. (Newton, J.) Argued June 17 and 18, 1891. Decided July 3, 1891.

Respondent was convicted of burglary, and sentenced to the State House of Correction and Reformatory at Ionia for five years. Judgment affirmed. The facts are stated in the opinion.

*Ransom C. Johnson,* for respondent.

*A. A. Ellis,* Attorney General, and *John M. Russell,* Prosecuting Attorney, for the people.

GRANT, J. The respondent was convicted of burglary. Two errors are alleged upon which he asks for a reversal of his conviction:

1. That a disqualified juror sat upon the panel.[1]
2. That the building into which the respondent broke and entered was not within the curtilage.

1. We need not determine the qualifications of the

[1] The juror was challenged for cause, and the challenge overruled.

juror under this record, because the defendant did not challenge the juror peremptorily, nor exhaust his peremptory challenges. Until a respondent has exercised all his peremptory challenges, he cannot be heard to complain of the retention of an alleged incompetent juror. *Sullings v. Shakespeare,* 46 Mich. 408; *People v. Barker,* 60 Id. 277; *Theisen v. Johns,* 72 Id. 285.

2. The dwelling-house was alleged in the information to be that of one John Donnelly. The evidence showed that James Donnelly, a son of John, lived in another house upon the premises, with a lane between the two houses. There were several outbuildings upon the premises, including a barn, which was broken and entered, and certain goods stolen therefrom. Both James and John had property in the barn at this time. The barn stood a short distance from the house. At the end of the house was a little gate, through which was the passage-way from the house to the barn. This gate was about 10 feet from the door of the house, and there was no other fence between the house and the barn.

The circuit judge, upon this branch of the case, charged the jury as follows:

"You will judge whether this barn was cut off from open access by bars or gate from the house to the barn, and from the barn to the house. If you so find, then the barn would not be within the curtilage of the house, and would not be protected as a part of the house, and the respondent could not be convicted. But if you find that the barn was an outhouse adjacent to and used as a part of the homestead of John Donnelly, and there was access by gate or bars from the house to the barn, and that the same was used 'for the better enjoyment thereof by him, as farmers commonly use such buildings in connection with their homesteads, then such barn would be within the curtilage, and under the law would be regarded as part of the dwelling-house. And you must, gentlemen, be satisfied beyond reasonable doubt that the respondent alone, or by himself and another,

did break and enter the barn of John Donnelly within the curtilage, in the night-time, with the intent to commit the crime of larceny."

The greater part of the personal property in the barn belonged to James, but this is not conclusive that the barn was not in the curtilage of John. James testified that both he and his father had the privilege of using the barn, and that each had grain stored there at the time. We think the charge of the court correctly stated the law applicable to the case.

The conviction is affirmed.

The other Justices concurred.