## WALTER H. STEVENS *vs.* UNION RAILROAD COMPANY.

### PROVIDENCE—MARCH 16, 1904.

PRESENT: Stiness, C. J., Tillinghast and Blodgett, JJ.

(1)  *Jurors.  Number of Peremptory Challenges:*

Gen. Laws cap. 243, § 2, provides that "either party in a civil action or in
any criminal proceeding may, before the opening of such an action or pro-
ceeding to the jury, challenge in writing, addressed to the clerk of the
court, any qualified jurors called for the trial of said cause, not exceeding
one in four, without alleging or showing any cause therefor: "—

*Held,* that the words "qualified jurors" refer only to those jurors who are
not subject to challenge for cause in the case, fixing the maximum number
of peremptory challenges possible at five for each party.

(2)  *Jurors.  Challenges.  New Trial.*

While it is error for the court to permit a greater number of challenges to a
jury than allowed by law, yet the law is concerned rather with the fairness
of the trial and the impartiality of the jurors than with the particular
jurors who compose the jury and render the verdict, and unless a party
shows prejudicial error a new trial will be refused on this ground.

TRESPASS ON THE CASE for negligence.  Heard on petition
of plaintiff for new trial, and denied.

BLODGETT, J.  Two questions are presented by the excep-
tions, the first being whether the number of peremptory chal-
lenges to a jury shall be computed upon the total number of
jurors qualified generally as jurors who are called, including
those who are challenged for cause, or whether the basis of
computation shall be the number called exclusive of challenges
for cause but inclusive of the increment of substitutes upon
peremptory challenges; and the second question being as to
the effect of the allowance of a greater number of such chal-
lenges than is specified in the statute.

It is obvious that the answer to the first question must
depend upon the construction to be given to the word "quali-
fied" in Gen. Laws, cap. 243, § 2, as follows:

(1)    "Either party in a civil action, or in any criminal proceed-
ing, may, before the opening of such an action or proceeding
to the jury, challenge in writing, addressed to the clerk of the

court, any qualified jurors called for the trial of said cause or proceeding, not exceeding one in four, without alleging or showing
any cause therefor; and after such objection the challenged
jurors shall not sit in the trial of such cause, but other jurors
shall be called to take the place of the challenged jurors for
the trial of the cause."

The statute under consideration establishes the same rule
for "any criminal proceeding" which it prescribes for "a civil
action." Whether liberty or property be at issue, there is the
same rule in this behalf in the composition of a jury for the
trial of an indictment for murder as in the trial of an action
of assumpsit. It is a statute, too, which is or may be invoked
daily upon the impaneling of a jury. An examination of the
statutory provisions of other States, as summarized in Thompson & Merriam on Juries, section 165, discloses that no other
State provides for peremptory challenges in proportion to the
whole number of persons called as jurors, but that in every
State the maximum number of peremptory challenges is
definitely prescribed by the statute. It accordingly becomes
necessary to interpret and construe the provisions of our
unique statute upon principle rather than upon strict precedent, aided as we may be by a consideration of the course of
legislation upon the subject and by the analogies which may be
deduced therefrom and the object sought to be attained thereby.

Our first legislation upon the subject of peremptory challenges is contained in an act of the General Assembly
passed in 1647, which by title specifically incorporates in its
provisions an act of parliament (32 Hen. VIII, c. 3) enacted
in 1540, and is as follows (I R. I. Col. Rec. 199): "And be it
further enacted that men have their peremptory and other
challenges, to the full as they have them in England, where
for petty Treason, Murder and Felony, they may challenge to
the number of twentie. See 32 Hen. VIII. 3."

This statute is of special interest because it first specifies
the cases in which peremptory challenges might be allowed
the accused and fixes their number at twenty; and this seems
to have been the law of the colony and of the State until the
revision of 1857 (Rev. Stat. cap. 172, § 33), when the right of

peremptory challenge was also extended to "any criminal proceeding" as well as to civil actions, the number being changed to one in six of the jurors called for each party (*State v. Sutton*, 10 R. I. 160) at the common law, there being no right of peremptory challenge in a civil action.

Conforming to the injunction to consult the statute 32 Henry VIII, 3, in order to determine the right to peremptory challenges "as they have them in England," it will be seen that this act, among other provisions, deprives of the benefit of clergy those who "challenge peremptorily above the Number of Twenty Persons" under 25 Henry VIII, C. 3 (1533), as well as provides "that no person or Persons arraigned for any Petty Treason, Murther or Felony, should be admitted to any peremptory Challenge above the Number of Twenty" under 22 Henry VIII, C. 14 (1531), and makes them "to be observed and kept forever."

Prior to the passage of the statute last cited the number of challenges allowed at the common law to the accused was thirty-five, and if he challenged more than that number he was to be hanged, although formerly to suffer death by pain *fort et dure.* And such seems to have been the law even in the next preceding reign of Henry VII, for in the Year Book 3 Henry VII, fol. 12 (5) (1488), it is recorded "Ḣome arraign denat Ḟairfax, Ḃrian & Ḣough a Newgate chall'. xxxvi. Et le question fuit, q̃ ʃrra fait de luy. Et touts les Iuʃtic de lun banke et de lauter accord' ore, q̃ il ʃerra pendu, et ne ʃerra mis a ʃon penance, Et voillent q̃ cheʃc gard' ce rul' quant il viet en ʃon circuit denat luy Huʃʃey dit, que les opinions des Iutices en temps E. le 4. ad eʃtre le contrarie. Mes ore ils agree, come appiert denant." And see .Year Book 4 Edw. IV, 11 (1465); 17 Edw. III, 42 (1343); Year Book 14 Edw. IV, 7 & 8 (1475), and Year Book 3 Henry VII, 2 (1488); Year Book 3 Hen. VII, fol. 12 (8); and see Kelyng's Rep. 36 (temp. Car. II).

As to the effect of this statute, it is observed in Hawkins Pleas of the Crown Book II, cap. 43, § 9, as follows: "It seems to be holden by Sir *Edward Coke*, that he who challenges more than twenty upon an Arraignment of Felony, since the above-mentioned Statute of 22 H. 8. shall neither forfeit his Goods, nor have

Judgment of Death, nor of Pain *fort & dure,* but shall only be over-ruled as to his Challenges so far as they exceed twenty, and put upon his Trial.   But this seems to have been doubted by Sir *Matthew Hale,* and the contrary is holden by *Crompton,* and seems more agreeable to the most natural Construction of 22 H. 8. which seems to have intended no Alteration as to the Nature or Effect of Peremptory Challenges, but only as to their Number.   To which may be added, That nothing is more Common than for subsequent Statutes which take from Felons the Benefit of Clergy, expressly to exclude those who challenge more than twenty, which would be needless if their Challenge were only to be over-ruled, and did not subject them to Judgment of Death, &c."

But the later law seems to have been that the supernumerary challenges should be disregarded and that the trial should then proceed after twenty challenges had been allowed the accused, although a statutory provision to that effect did not appear in the statutes of this State until 1838 (January session).   "An Act Concerning Crimes And Punishments," section 28, page 32, section 24 of which limits peremptory challenges to twenty "and no more."

But the act of the General Assembly of 1647, *supra,* and the acts of parliament therein referred to relate only to the number of peremptory challenges allowed the accused, and it is therefore necessary to ascertain the law giving the number of such challenges allowed the prosecution by the law of England.   At the common law this number was unlimited and the counsel for the crown was only bound to object "*quod non sunt boni pro Rege.*"   But this right of peremptory challenge was early abolished and the crown was required to challenge for cause only by the "*Ordinatio De Inquisitionibus,*" 33 Edw. I, Stat. 4 (1305), which provided that henceforth, although those who prosecute in behalf of the king shall aver that certain jurors were not indifferent (*boni*) for the king, that nevertheless, the inquests should not remain untaken for that cause but that, if they will challenge any jurors, they shall assign a cause certain for the challenge, which shall be enquired of according to the custom of the court, and there-

after the taking of the inquisitions shall proceed according as it shall be ascertained whether the challenges are true or false, after the discretion of the justices. (*"Quod de cetero licet per ipsos qui pro domino Rege sequuntur dicatur quod juratores inquisitionum illarum seu aliqui illorum non sunt boni pro Rege non propter hoc remaneant inquisitiones ille capiende set si illi qui sequuntur pro Rege aliquos juratorum illorum calumpniata fuerint assignent certam causam calumpnie sue & inquiratur veritas illius calumpnie secundum consuetudinem Cur' & procedatur ad captionem illarum inquisitionum prout compertum fuerit si calumpnie vere sint nec ne juxta discretionem Justic'."*) And the provisions of this act seem to have governed the law in Rhode Island until the revision of 1857, *supra*, gave equal right of challenge to the State and to the accused.

Says Lord Coke (I Inst. 157, b.) "Now the causes of" (challenge for) "favour are infinite. . . . For all which the rule or law is, that he must stand indifferent as hee stands unsworne."

The relevancy of the foregoing observations upon the law relative to the challenging of jurors to the questions under consideration will more clearly appear when it is noted that from the earliest recorded legislation upon this question the policy of the law has been to restrict and make definite the maximum number of peremptory challenges, while leaving the number of challenges for cause wholly unlimited, and that the maximum number of the former is always a fixed and definite number and is in no wise dependent upon the number of the latter. First, the right of peremptory challenge was taken from the crown entirely—(I Ventris 309) (1678) by the act 33, Edw. I. C. 4,—then death was the penalty at the common law for an accused who persisted in challenging more than thirty-five until the enactment of 22 Henry VIII, cap. 14, made perpetual by 32 Henry VIII, cap. 3, and incorporated in the act of the General Assembly of 1647, and in force until the revision of 1857.

The language used in the statute under consideration is capable of construction in two ways. If the expression " quali-

fied jurors called for the trial of said cause" shall be held to include all those jurors in attendance and called for the trial who possess the statutory qualifications of age, residence, and property which are requisite for jury duty generally, then it is clear that substitutes for those challenged for cause must be included in the number upon which peremptory challenges are based; but if the expression used above shall be interpreted as meaning only those who are found qualified to sit in the cause then at issue and to be tried, and who in addition to the general statutory qualifications of jurors are not subject to challenge for cause for interest, bias, relationship, or otherwise, it is equally clear that the twelve so impaneled are the jurors as to whom the right of peremptory challenge is to be allowed, increased of course by the substitutes for those so peremptorily challenged.

We are advised that the practice of the Common Pleas Division has not been uniform in the construction of the statute now in force, and we therefore are not confronted with a practice which has been continuous for many years. Upon careful consideration, not only of the language used, but of the object to be attained, we are of the opinion that the more restricted meaning is to be given to the word " qualified," and that it refers only to those jurors who are not subject to challenge for cause in the case then for trial. Even so limited when twelve such jurors have been finally obtained, there being a peremptory challenge as to one of every four called, each party would then have a right to three such challenges, which would require six more such jurors to fill their places. These added to the twelve originally obtained would make eighteen such jurors called, and each party would again be entitled to one more challenge on this increment, which would again require two more such jurors to be called; and this being done, twenty jurors will then have been called and each party is again entitled to one more challenge, again requiring two more such jurors to fill their places, with the net result that twenty-two jurors will then have been called, and that each party will then have had five challenges, thus making it collectively possible by peremptory challenge to remove from the

panel almost every other juror called. We think that this construction gives to the parties all that the General Assembly intended that they should be entitled to have in this behalf, and that if more was intended, more would have been expressed in the act.

The contrary construction leads to this result—that a peremptory challenge is to be allowed for every four persons called as jurors, although all of them may be disqualified to sit in the case by reason of interest, consanguinity, or bias. This is simply increasing the number of peremptory challenges in proportion to the number of jurors who are removed from the panel for cause. It is not the purpose of the law to base a peremptory challenge upon a challenge for cause, but rather that peremptory challenges may be had to a limited extent independently of any cause. Indeed, if the juror be excluded for cause, there is no need of a peremptory challenge, since his exclusion is otherwise accomplished. And in practice under the latter construction, which has frequently been given to the statute *ex abundanti cautela* in criminal cases, and, indeed, was given to the statute in the case at bar, great difficulties have been encountered in obtaining a jury, since it requires but brief reflection to compute that each party may soon have a right to more than twelve challenges, and that the entire panel may thus be twice vacated with the result that six more challenges will then accrue to each party upon the twenty-four substitutes for those so challenged, making it again possible to remove the whole panel a third time and thus giving three more challenges to each party as to the twelve men then called and to additional challenges for each four substitutes therefor. We are of the opinion that such a construction should not be placed upon the statute unless it was the unmistakable will of the legislature that such was the legislative intent.

The construction which we here give to the statute now in force fixes the maximum number of peremptory challenges possible at five for each party, while the construction contended for by the defendant leaves the number not only unlimited,

but makes it to depend upon and to increase without limit in proportion to the number of challenges for cause.

(2)    Inasmuch as the substitute for a juror challenged for cause was computed in the number upon which a peremptory challenge was allowed to the defendant in the case before us, thus giving the defendant four challenges where otherwise, and according to the construction which we give to the statute, but three should have been had, the plaintiff's exception in that behalf must be sustained.

This being so, we proceed to consider the effect of this action upon the verdict rendered by the jury for the defendant and which is not attacked otherwise than because the jury rendering it is claimed not to be the jury to which the plaintiff was entitled, in respect of this one juror so removed and the substitute so added.

Upon the question whether prejudicial error must be shown in such a case or whether error is presumed from a departure from the exact requirements of the statute, irrespective of any lack of claim of prejudice therefrom, the decisions in the different States are not uniform. The defendant contends for the latter view, and in support thereof has urged upon our consideration the following cases.

In *State* v. *Shaw*, 3 Ired. (N. C.) 532 (1843), cited by the plaintiff, the court say: "We distinctly admit, that the ground on which peculiar privileges of challenge are allowed to prisoners in capital cases is . . . not that the prisoner shall be tried by a jury of his own choice or selection, but by one against which, after exhausting his peremptory challenges, he can offer no just exception." And in commenting on this case in *State* v. *Hensley*, 94 N. C. 1021 (1886), which was an indictment for murder, the court say, p. 1028: "In that case, the juror challenged was of the original panel, and when this panel was exhausted, and before calling any of the jurors of the special *venire*, the prisoner did not have opportunity to accept or reject the juror challenged, or discharged," adding on p. 1029: "It is no part of the purpose of the right of challenge, to afford the prisoner opportunity to select a particular juror or jurors, most likely to acquit, or to give

him undue advantage.  He has no right to select, and have
his own choice of jurors; he has only the right to object to
twenty-three, without assigning any cause, and indefinitely, ·
for cause allowed by law to be good.  His right is to have a
jury, fair, impartial, and free from just exception, and when
the jury is selected without objection, the prisoner having the
right to object further it must be presumed conclusively, that
such a jury has been obtained.  His failure to object further,
when he could, is an implied admission—declaration—on his
part, that the jury is a fair and unexceptionable one, though
perhaps not his choice.  This is such a jury as the law con-
templates and requires."

Of *Montague* v. *Commonwealth*, 10 Grat. (Va.) 767, decided
in 1853, and which contains not one citation to support the
doctrine there advanced, but which seems to be still the law
of Virginia, it is said by the court in *Thompson* v. *Douglass*,
35 W. Va. at page 340, and decided in 1891, as follows:  "I
am of opinion that this decision is erroneous, and hurtful to
the practice of the courts and the administration of justice,
and ought not longer to prevail.  The doctrine that harmless
error shall not reverse and render fair trials abortive has made
great progress since the date of the decision cited.  Judge  ·
Lee gave no reasons in the opinion except that in criminal
cases the law would intend harm to an accused where he is
deprived of a right.  He did not even refer to the *quaere* in
*Clore's Case*, 8 Gratt. 606 (Va.), and the strong argument of
Judge Lomax, probably overlooking them.  That argument
is in my judgment, unanswerable."

And upon the question of the erroneous exclusion of certain
jurors from the panel which tried the case then before the
court, in *Thompson* v. *Douglass*, *supra*, it is said, p. 340: "What
then?  Is it reversible error or harmless error?  Where a· dis-
qualified juror is put on a jury, it is of course error;  but, where
a qualified juror is improperly rejected, it is a wholly different
thing.  In such case the man taking his place is qualified and
unexceptionable.  Is he not as good as juror as the excluded
one?  Has not the party had what the law designs—a trial
by an impartial jury?  If you set aside the verdict, upon a

new trial he cannot get that rejected man.    Is that man better than all the balance of the citizens of the State qualified for jury service?    Shall a long, costly trial be upturned for such a cause only to give the party what he has already had—a fair jury?    Is the administration of justice to bear the odium of such technicality?"

The plaintiff also cites *Welch* v. *Tribune Pub. Co.*, 83 Mich. 661, decided in 1890, in support of his contention.    But in *Brennan* v. *O'Brien*, 121 Mich. 491, decided in 1899, the court say of this case:    "It was shown that the plaintiff was prejudiced by the action of the court in excusing the juror.    In the present case the defendant had not exhausted his peremptory challenges and it does not appear that the panel of regular jurors had been exhausted.    Under such circumstances we cannot say that the defendant was prejudiced in any of his rights," and re-affirms *Luebe* v. *Thorpe*, 94 Mich. 271 and *Atlas Mining Co.* v. *Johnston*, 23 Mich. 36 (1871), in which the court say:    "And though it would be ground of error for the court to admit a juror who is challenged and ought to have been rejected, it is no ground of error for the court to be more cautious and strict in securing an impartial jury than the law actually required;    and that for this purpose the court may very properly reject a juror on a ground which would not be strictly sufficient to sustain a challenge for cause; or, in other words, when the refusal to sustain the challenge would not constitute error.    So long as an impartial jury is obtained, neither party has a right to complain of this course by the court;    and especially when, as in this case, no objection was taken by either party to the competency or impartiality of the jury which was obtained."

And in *Commercial Bank* v. *Chatfield*, 121 Mich. 641 (1899), the court said:    "The first assignment of error relates to the excusing of a juror for cause when he was not disqualified. . . .    It is not shown he was prejudiced by the fact that the juror was excused.    The case is ruled against the appellant by *Atlas Mining Co.* v. *Johnston*, 23 Mich. 36;    *People* v. *Carrier*, 46 Mich. 442;    *Torrent* v. *Yager*, 52 Mich. 506;    *People* v. *Barker*, 60 Mich. 277;    *People* v. *Aplin*, 86 Mich. 393."    In

view of these repeated affirmations of a doctrine opposed to the plaintiff's contention it would seem that the case cited by him must have been placed upon his brief by mistake.

The next case cited by the plaintiff is *Hill* v. *State*, 10 Tex. App. 618 (1881), in which the action of the court in excusing a qualified juror was criticised, but the point raised was not determined, the court saying, p. 624: "We have thrown out these remarks by way of caution, and not for the purpose of deciding the point involved, there being another error which will necessitate a reversal of the judgment."

The plaintiff then cites *Wade* v. *State*, 12 Tex. App. 358 (1882), in which, on the trial of an indictment for murder, the court sustained the State's challenge for cause against the defendant's objection that the juror was qualified, and the court said: "The question thus raised is one which, so far as we are advised, has not been adjudicated in this court, or in our Supreme Court. We have found no reported case in this State where the question has been presented. . . . It has been settled by this court that the rulings of the court in organizing a jury are not revisable unless they infringe the law or prejudice the accused. . . . In this case we think the action of the court in setting aside the juror upon the challenge of the district attorney for cause was an infringement upon the law, though it may not have operated to the prejudice of the defendant; and for this error the judgment is reversed and the cause remanded."

The plaintiff also cites *Monk* v. *State*, 27 Tex. App. 450 (1889). The first part of the opinion criticises the action of the trial judge in a murder case, in excusing a juror held to be disqualified by reason of jury service, within the statutory limits prior to the trial, and holds that the juror was not disqualified. The conclusion of the opinion is as follows:

" This testimony is obnoxious to two objections. (1) A part of it is hearsay. (2) A part is the opinion of the witness, the result of an investigation to which the appellant was in no manner a party.

"Appellant's last assignment of error is that the verdict is not supported by the evidence. In this we think counsel for

appellant is correct.   We are not willing to sanction and allow
to be served as a precedent, a verdict founded upon such vague
and inconclusive facts.

"For the reasons noted above, the judgment is reversed
and the case remanded for another trial."

From this record it clearly appears that the main grounds
for a new trial were other grounds than the action of the court
in excluding the juror in question, if, indeed, that point can be
said to have been determined by this opinion.

In *Phillips* v. *State*, 68 Ala. 469 (1881), cited by plaintiff,
the statute of that State required a list of the persons sum-
moned as jurors to be served on a defendant in a murder case,
at least one entire day before trial, and the court say that:
"It has never been construed as directory, but as conferring
on the accused a substantial valuable right, of which he cannot
be deprived by the act of the court, or by the laches of its
ministerial officers.   . . .   The purpose of the statute
cannot be misunderstood.   The accused has not a right to be
tried by such a jury as may be selected from the body of the
county, but by a jury selected from the list served upon him,
so far as was practicable.   It is intended that, as to the persons
summoned, he shall have full opportunity of ascertaining
whether causes for challenge exist and also to inform himself
as to whom, if any of them, he should exercise the right of
peremptory challenge.   Of what avail is the right, if, without
sufficient cause, the court can discharge from service persons
who have been summoned and drawn?   . . .   It is an
error fatal to a judgment of conviction, when it appears that
the court has by its action denied, impaired or diminished
this right of the accused."   Thus it will be seen that the court
held that the accused had been prejudiced by the action of the
court below.

And in *Sullivan* v. *State*, 102 Ala. 135 (1893), cited by the
plaintiff, the court conclude upon the erroneous action of the
trial court in excusing a juror for an alleged misdemeanor,
under the statute above referred to, as follows:   "The error,
it may be, was not of practical injury to the defendant.   We
deem it safer, however, to adhere to the long settled rule, that

when error is shown, the presumption of injury arises, which must be clearly repelled by the record or the judgment will be reversed." But this is a distinct admission that if the record does show no injury to the complaining party that the judgment should not be reversed.

Indeed, in the later case of *Moseley* v. *State*, 107 Ala. 74 (1894), the court say: "The defendant moved the court to quash the *venire* upon the ground, that the court of its own motion had excused from attendance without his knowledge or consent and in his absence, certain jurors summoned on the regular panel, whose names were on the special *venire* served on him, from which the jury, for his trial, was to be empanelled. The order of the court was, 'that said jurors be excused from further attendance for reasons deemed sufficient by the court,'" and the action of the trial court was not reversible error.

The plaintiff also cites *Mayor of Cartersville* v. *Lyon*, 69 Ga. 577 (1882), in which the court say: "Whether the juror be left on the jury which tries the issue or not, *under our law*, if he be wrongfully discharged, a new trial should be awarded." The court adding, however: "Of course if, as in the 46 Ga., 80" (*Johnson* v. *Mayor, etc. of Americus*) (1872), "the facts make the verdict imperative, all presumption of hurt to plaintiff in error is removed, and no new trial will be awarded; but if the facts make a disputable case, the new hearing should be had."

The exact decision in the last-mentioned case was as follows, after holding: "That the jurors who resided within the corporate limits of the city were *incompetent* jurors and it was error in the court in overruling the objection to them. . . . But in our judgment, inasmuch as the verdict of the jury in this case was right, both under the law and the facts of the case, and a different verdict should not have been rendered by any jury, we will not reverse the judgment of the court below on the ground of the objection to a portion of the jurymen constituting the panel of twenty-four, nor for any mere technical errors in the charge of the court." It thus appears that, even if certain jurors were clearly incompetent to sit,

the court would not grant a new trial where it appeared that the verdict was clearly right.

And this case was affirmed in *Wright* v. *Smith*, 104 Ga. 174 (1898), in which the court refused to set aside a certain verdict where one of the jurors was related to a party within the prohibited degrees, such relationship being unknown to that party at the time of trial, when the verdict was manifestly right. The court say, p. 178: "After a careful review of the entire record before us, we believe that the verdict rendered by the jury was not only right, and sustained by a decided weight of the evidence, but that any other verdict would have been manifestly unjust. It would seem, therefore, to be a mere farce in judicial procedure to set aside this verdict simply because of relationship of the juror to a party who failed, and ought to have failed, and thus take up the time of the court and country to try a case on an alleged error that worked no possible harm in the case."

The remaining cases cited by the plaintiff are *People* v. *Bodine*, 1 Denio 281 (1845); *Hildreth* v. *Troy*, 101 N. Y. 234 (1886); and *People* v. *McQuade*, 110 N. Y. 284 (1888). Inasmuch as the former two are cited and affirmed in the case last mentioned, our observations may properly be directed to that case. While they are in point upon the contention, nevertheless this last case turns in very large measure upon the statute of New York then in force. Thus, as to the question of peremptory challenges it is said, p. 292: "The subject is regulated by statute. . . . We are of opinion, however, that the order in which peremptory challenges are to be taken is matter of substance, and that section 385, so far at least as it requires the People to first exercise the right of peremptory challenge, is imperative and not directory," and page 295: "The statute is peremptory, and violation of its provisions was a substantial, and not a mere technical error." Again, on page 297, in referring to section 455 of the Code of Criminal Procedure, the court say: "It will be observed that by this section an exception lies . . . where, as a matter of law, the court erred in allowing or disallowing a challenge," and on page 304,—"If the challenge is sustained

the juror necessarily is excluded and does not participate in the verdict, but an exception is expressly given in that case as in the other." And although the court expressed its disapprobation of the action of the trial court in excluding a certain juror from the panel, the court concludes its opinion on that question in the following words (p. 306): "But while we are of opinion that the court, in excluding the juror Platt, committed a legal error, it is not necessary to decide that this error alone would require a reversal of the conviction. It may be that the erroneous exclusion of a juror from the panel, by mistake or inadvertence, where it could be fairly inferred that no injury resulted to the defendant, might be disregarded under section 542 of the Criminal Code. We do not pass upon this question."

The brief submitted for the defendant upon this important question consists of three pages and contains no citations.

The precise question presented here was not before the court in *State* v. *Congdon*, 14 R. I. 458, or in *Fiske* v. *Paine*, 18 R. I. 635, which affirms the former case, but in which case it is said, however, of certain other errors alleged in the composition of the jury in those cases, that: "The court should consider whether the right of a party to a fair and impartial trial has been prejudiced, and decide accordingly, whether the alleged disqualification be *propter defectum* or *propter affectum*. . . . The decisive test is the fact of a fair trial." And this rule is affirmed in *Sprague* v. *Brown*, 21 R. I. 329, in which case the court say that "after full trial a verdict will not be disturbed unless it appears from the circumstances of the case that some injustice has been done." And see also *Watson* v. *Tripp*, 11 R. I. 98.

But in *United States* v. *Cornell*, 2 Mason, 91 (1820), which was a petition for a new trial on an indictment for a murder alleged to have been committed at Newport, Mr. Justice Story, in delivering the opinion of the Circuit Court of the United States for the District of Rhode Island, sustained the action of the trial court in excusing of its own motion for service on the jury two persons summoned as jurors who stated that they were Quakers "and excepted to themselves as disqualified,

because they were conscientiously scrupulous of taking away
life, and did not think themselves impartial in a capital cause,"
concluding his observations thereon in these words: "Even
if a juror had been set aside by the court, for an insufficient
cause, I do not know that it is matter of error, if the trial has
been by a jury duly sworn and impanelled, and above all
exceptions. Neither the prisoner nor the government in such a
case have suffered any injury."

And the same judge, speaking for the court in *United States*
v. *Marchant, et al.,* 4 Mason 158 (1826), also a murder case,
states the reason for the rule as above laid down as follows:
"The right to challenge for cause is unlimited; but the right
of peremptory challenge, without cause, is limited. What is
the right of peremptory challenge, but a right to exclude from
the trial any persons, who are disagreeable to the party on
trial? Suppose the panel to consist of seventy-two persons
and the challenges to be limited to twenty, all that the prisoner
can do is to exclude twenty from this list; and it depends
altogether upon the order in which the jurors are called, who
may be excluded or not. If the prisoner challenge the first
twenty, who are called, the twelve next called from the re-
maining fifty-two, constitute the jury. It is true, that if he
chooses to suffer any juror to be sworn before he has exhausted
his challenges, to that extent he selects his jury; but this is
a mere incident to his right to exclude jurors to a limited
extent; and not the principal object contemplated by the
law."

When this case reached the Supreme Court of the United
States (12 Wheat. 480), the same learned judge, speaking for
that court said further: "The right of peremptory challenge
is not of itself a right to select, but a right to reject jurors.
It excludes from the panel those whom the prisoner objects
to, until he has exhausted his challenges, and leaves the residue
to be drawn for his trial according to the established order or
usage of the court.  .  .  .    The right, therefore, of chal-
lenge, does not necessarily draw after it the right of selection,
but merely of exclusion. It enables the prisoner to say who
shall not try him; but not to say who shall be the particular

jurors to try him.   The law presumes that every juror sworn in the case is indifferent and above legal exception:   for otherwise he may be challenged for cause.   What jurors, in particular, shall try the cause, depends upon the order in which they are called;  and the result is a mere  incident following the challenges, and not the absolute selection of the prisoner, resulting from  his power of  challenge."   To the same effect are *Northern Pacific R. R. Co.* v. *Herbert*, 116 U. S. 642, p. 646 (1885);   *Hayes* v. *Missouri*, 120 U. S. 68 (1887);   *Spies* v. *Illinois*, 123 U. S. 131, p. 168 (1887);   *State* v. *Marshall*, 8 Ala. p. 306; *Vaughan* v. *State*, 58 Ark. pp. 361–2 and cases cited; *People* v. *Arceo*, 32 Cal. p. 47 and cases cited, affirmed in *People* v. *Collins*, 105 Cal. 510 (1895);   *John* v. *State*, 16 Fla. p. 561 (1878);   *Pittsburgh, &c. R. R. Co.* v. *Montgomery*, 152 Ind. p. 24 (1898);   *Geiger* v. *Payne*, 102 Iowa, p. 587 (1897);   *City of Abilene* v. *Hendricks*, 36 Kans. p. 200 (1887); *State* v. *Lewis*, 41 La. An. 590 (1889);   *State* v. *Cady*, 80 Me. p. 413 (1888);   *State* v. *Kluseman*, 53 Minn. p. 545 (1893); *West* v. *Forrest*, 22 Mo. p. 346 (1856); *O'Brien* v. *Vulcan Iron Works*, 7 Mo. App. p. 260 (1879);   *Omaha & R. V. R. R. Co.* v. *Cook*, 37 Neb. p. 447 (1893);   *State* v. *Bradford*, 57 N. H. p. 198 (1876);   *State* v. *Larkin*, 11 Nev. p. 327 (1876);   *Commonwealth* v. *Mosier*, 135 Pa. St. p. 235 (1890);   *State* v. *Ching Ling*, 16 Or. p. 421 (1888);   *Southern Pacific Co.* v. *Rauh*, 7 U. S. App. (Or.) p. 95 (1892);   *State* v. *La Croix*, 8 So. Dak. p. 369 (1896);   *Henry* v. *State*, 4 Humph. (Tenn.) 270 (1843); *Sutton* v. *Fox*, 55 Wis. 531 (1882), and cases cited at p. 540.

The cases to which we have last referred declare and affirm in this country and at the present time the same doctrine that prevailed in England in the past—that the law is concerned rather with the fairness of the trial and the impartiality of the jurors than with the particular jurors who compose the jury and render the verdict.

In the Year Book 21 Edw. 4, fol. 12 (Michaelmas Term 1482), is recorded the case of the Dean and Chapter of Lincoln in which one of the jurors was challenged by the defence because he was brother of one of the prebendaries of the Chapter, and the question was as to the allowance of the chal-

lenge as a principal challenge. The case was argued at length at that term, Starkey contending that here evident favor appeared and that favor or malice were alike grounds for principal challenge. ("Car le mere cause pur que un chall' est princ, est pur ceo q evident favour appert enter les iurours et le ptie, come cosinage, aliance, ou son seruant en son draperie, ou auter challenge q poit enduce que expressmint favour est enter eux, ou auter chose que proue expressement malice enter eux sicome le ptie ad trespas ou appel pedant vers le iuror vers luy, ceux sont princ challenges.")

Pigot and others contended, amongst other things, that inasmuch as a member of a corporation could not release the action and stood as a stranger to the case, there could be no favor or malice on the part of the juror. (" le deane et le chapiter est corporate p tiel nosme et est un corps politike et en ley come un singuler perso . . . et un sole person de ceo corps per soy nad my pluis a faire q un estrange home, car il ne poit releas laction, ne ascun parte darcion, ergo come un person natural il nad my riens a faire en tiel person, ergo nul natural malice ne fauour ne serr pas material a challenge iuror.") The case was then continued for further argument until the following Hilary Term (fol. 20.) and again argued and again continued for further argument to the following Easter Term (fol. 31), when Vavisour again urged that the juror was not indifferent, saying of the canon: "Bonques il est privey al action et le iuror est son frere, et le ley nentend que il est indifferent, en ql cas serra dit un principal challenge." And after prolonged argument "Le Court dit q il est equedubium," and after further argument it was conceded by Fairfax, that indifferency was the test and that in the cases supposed by Vavisour the juror was not indifferent: ("En touts cases serra entedue q ils ne sot indifferet"). And later the case was continued to the next Michaelmas Term (fol. 63): "En Leschequer Chamber" before "touts les Justices," and after further · argument it is reported: "Et lopinion de touts les Justices fuit, q challege fuit bon, preter · Fairefax." An examination of the protracted arguments on each side and the opinions of the several justices shows that the true test of the composition of a jury is the test of indifferency on the part of the jurors.

And in Year Book 7 Henry VI, fol. 25 (1428), upon a challenge for favor in an action of replevin, Babington, Chief Justice, charged the triers of the challenge that if the juror will pass for one or the other, whether the matter be true or false, then he is favorable, but if he has said twenty times that he will pass for one or the other they should enquire upon their oaths whether the cause be for the affection which he has to the party or for the knowledge he has of the matter in issue; if for the former, then he is favorable, but otherwise not. And if the juror has more affection to one party than to the other, but has a full knowledge of the matter in issue, and if he be sworn will speak the truth notwithstanding the affection for the party, then he is not favorable. ("Saches nous triours que serra entend fauourable, il est fauourable q si le matter soit veray ou auterment faux, il uoit passer oue lun ou laut, en ceo case il est fauourable: mes si home ad dit xx. foits, que il uoit passer oue lun ou laut, enquire uous sur un' serements si la cause soit pur laffection que il ad al party, ou pur le notice que il ad de chose en issue: et si pur laffection que il ad al party douques est il fauourable, mes auternt nemy. Et sil ad pluis affection a lu partie que a lauter: Mes sil ad pleine notice del chose en issue, et sil fuit iure, il uoit dire la veritie, nient contristeant laffection q il ad al partie, il nest pas fauourable, quod nota.")

Here also the test of indifferency on the part of the jurors is defined and applied. And see 1 Salk. 152 (1689); *Denbawd's Case*, Coke Rep. Part X. 102 b (1613).

The same doctrine is thus concisely stated later by Lord Coke (3 Inst. 27): "The end of challenge is to have an indifferent tryall, and which is required by law; and to bar the party indicted of his lawfull challenge, is to bar him of a principall matter concerning his tryall."

Such an "indifferent tryall" the plaintiff in the case at bar has had. More than this he cannot require, and with this he must be content.

Petition for new trial denied.

*Comstock & Gardner*, for plaintiff.

*Henry W. Hayes, Frank T. Easton, Lefferts S. Hoffman*, for defendant.